ELIZABETH ROBERTSON, PETITIONER-APPELLANT, v. EXPRESS CONTAINER CORP., DEFENDANT-RESPONDENT.

Argued September 21, 1953—Decided October 13, 1953.

*Mr. Alexander Avidan* argued the cause for the appellant (*Messrs. Avidan and Avidan* and *Mr. Abraham Levine,* attorneys).

*Mr. Sidney M. Schreiber* argued the cause for the defendant (*Messrs. Schreiber, Lancaster and Demos,* attorneys; *Mr. Roger F. Lancaster* on the brief).

The opinion of the court was delivered by

OLIPHANT, J. This is a workmen's compensation case on appeal from a judgment of dismissal by the Appellate Division affirming a judgment of the Essex County Court dismissing petitioner's action. .

By stipulation between the parties the initial hearing in the Bureau was confined to a determination of the compensability of the accidental injury under the statute. If it were deemed compensable a further hearing was to be held for the purpose of establishing the extent of the disability. This latter hearing was not held as the Bureau dismissed the claim. It will thus be seen that three lower tribunals have resolved the issue against the petitioner. It comes before us only by reason of a dissent in the Appellate Division, *Rule* 1:2–1(*b*), now *R. R.* 1:2–1(*b*); *N. J. Const.* 1947, *Art.* VI, *Sec.* V, *par.* 1(*b*).

The question presented is—Did the admitted accidental injury suffered by the petitioner satisfy the statutory requirements of "arising out of and in the course of [her] employment"?

For a proper understanding of the case a rather detailed review of the facts is necessary. Petitioner, on July 10, 1951, suffered an accident and resulting injuries because of her falling through a glass skylight on a section of a roof of defendant's building during her lunch period. She was employed as a cleaning woman, her duties consisting of cleaning office rooms and a few others on the second floor of the building. Her work did not require her to go out on the roof except as hereafter stated. Her hours were from 4:30 P. M. until approximately 11:00 P. M. She had little or no supervision regarding her work. She worked alone after 5:00 P. M. At the beginning of her employment she was given her cleaning equipment and a closet inside the factory in which to store it, but following complaints concerning an odor from her mops she kept them on the roof outside the second floor beside a door which was always unlocked. It is not shown whether or not her employer knew of this. She never had any work to do on the roof but usually ate her

lunch there, near where she kept her mops. Evidently this was done without either the approval or disapproval of the defendant.

On the day of the accident petitioner went to the roof to partake of her lunch, and there having been a large fire at Port Newark a few days before she wanted to see if there was smoke still coming from it. To have a better view she walked along the roof some distance from where she kept her equipment, climbed a ladder to another roof at a higher elevation, then in attempting to reach another ladder which would have taken her to still another roof at a still higher elevation, she stepped on a small raised platform and in walking across it fell through a skylight. She testified there was nothing in her work which would call upon her to climb up there and she had never been there before. There is no evidence that it was her custom to take walks on the roof.

We are convinced that the statement of the facts heretofore made makes it self-evident that the accident arose neither "out of" nor "in the course of" her employment except in the latter instance as it occurred during her lunch period.

■ The test defining when an accident arises in the course of the employment was laid down in *Bryant v. Fissell*, 84 *N. J. L.* 72 (*Sup. Ct.* 1913), and has since been consistently followed. It was there stated

"* * * an accident arises 'in the course of the employment' if it occurs while the employe is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time * * *.
A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service. * * * And a risk may be incidental to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected with the employment owing to the special nature of the employment."

In *Beh v. Breeze Corporation*, 2 *N. J.* 279, 282 (1949), we stated:

"There must be a causal connection between the condition under which the work is required to be done and the resulting injury.

That injury must have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence."

Petitioner cannot bring herself within the tests laid down. While a lunch and rest period spent on the employer's premises does not necessarily interrupt the employment, *Hanna v. Erie Railroad Co.*, 8 *N. J. Misc.* 829 (*Sup. Ct.* 1930) ; *Flanagan v. Charles E. Green & Son*, 121 *N. J. L.* 327 (*Sup. Ct.* 1938), an accident occurring therein is not *per se* sufficient to entitle the employee to compensation. The injury must also arise "out of" the employment, and therefore what the employee was doing at the moment of the injury is an essential inquiry. There must be a causal connection (out of) as well as a time connection (in the course of) with the employment. *Horovitz on Workmen's Compensation* (1944), *pp.* 156, 157. In the instant case, when this petitioner fell she was doing something entirely foreign to her employment and it did not arise out of it. Neither was it incidental to the employment.

"The word 'incident' contains an element of the usual and reasonable, both as to the needs to be satisfied and as to the means used to satisfy them. If either is extraordinary, the action is no longer viewed as incidental." *Larson, Workmen's Compensation Law* (1951), *p.* 323.

The petitioner cites to us a number of cases in which compensation was allowed wherein the employee was injured during his temporary cessation of actual work on the employer's premises while in the performance of an act which was held to be reasonably incidental to the employment, *Terlecki v. Strauss*, 85 *N. J. L.* 454 (*Sup. Ct.* 1914) ; *Bolos v. Trenton, etc., Co.*, 102 *N. J. L.* 479 (*Sup. Ct.* 1926), affirmed *Boles v. Trenton, etc., Co.*, 103 *N. J. L.* 483 (*E. & A.* 1927) ; *Flanagan v. Green, supra; Hanna v. Erie Railroad Co., supra; Bubis v. Flockhardt Foundry Co.*, 119 *N. J. L.* 136 (*Sup. Ct.* 1937) ; *Crucible Steel Co. of America v. Hudson Common Pleas*, 115 *N. J. L.* 493 (*Sup. Ct.* 1935), affirmed 116 *N. J. L.* 393 (*E. & A.* 1936) ; *Waskevitz v. Clifton Paper*

*Board Co.,* 7 *N. J. Super.* 1 (*App. Div.* 1950), certif. denied 4 *N. J.* 561 (1950); *Macko v. Hinchman and Son,* 24 *N. J. Super.* 304 (*App. Div.* 1953), but in each of these cases another factor or factors were found which related the accident to the employment other than it merely happening on the premises during the lunch hour or rest period, such as a custom.

Petitioner frankly admits that New Jersey has not subscribed to the "curiosity case" doctrine, but insists it should now do so. In support of this argument there are cited excerpts from the recent text book of Professor Malone, *Louisiana Workmen's Compensation Law and Practice* (1951), *p.* 217. The author stands alone in his broad generalities, and in the cases cited by him there were trifling and, momentary deviations from the employment due to curiosity. In those cases the injured individual was at a place during the working time where either his services were called for or where his presence was permitted by the employer, and they do not support his broad assertion "that employees are likely to explore during their spare time and that this may be fairly regarded as a part of the daily routine of work."

A case somewhat analogous on the facts is *Webb's case,* 318 *Mass.* 357, 61 *N. E.* 2d 340 (*Sup. Jud. Ct.* 1945). There the deceased workman was a messenger boy who met his death on his first day of work. He did some errands in the morning but was given no duties in the afternoon, merely remaining around the office. He left the office, passed through a fire escape exit on to a fire escape in the rear of the building, descended to the second-floor level, then ascended the fire escape to the roof and crossed it to the front of the building and in some manner fell to his death on the sidewalk below. The reviewing board, whose decision the Supreme Court affirmed, found that "the use of the fire escape and the roof by the employee were not incidents or hazards contemplated by his employment as a messenger boy."

Compensability in so-called "curiosity cases" depends largely on whether or not what the employee was doing at the time of the injury was a momentary or impulsive act or

a deliberate and conscious excursion involving deviation from the usual place of employment, in this instance, from the place where petitioner was accustomed to eat her lunch. *Cf. Simon v. Standard Oil Co.*, 150 *Neb.* 799, 36 *N. W.* 2d 102 (*Sup. Ct.* 1949) ; *Jordan v. Dixie Chevrolet, Inc.*, 218 *S. C.* 73, 61 *S. E.* 2d 654 (*Sup. Ct.* 1950) ; *Larson's Workmen's Compensation Law* (1951), *p.* 368 *et seq.*

It does not appear that in this case there was any causal connection between the petitioner's custom of lunching and of keeping her mops on the lower roof and the injury she sustained while endeavoring to reach higher roof elevations by means of ladders. At the time of the accident she was not engaged in her employment or her customary lunch activity but was in the course of a promenade for purposes entirely unrelated to her employment over a separate portion of the roof, where, it is clear, she had never been before. Common sense dictated limitation in the eating of her lunch or the partaking of fresh air to an area reasonably adjacent to the place where her duties lay, even in the absence of an expressed prohibition against such roof wandering as she engaged in at the time of her injury.

Some day the law of workmen's compensation may reach the state where the Legislature by statute will enact and decree that any worker injured in employment shall have compensation for his injuries. Until such time, while mindful that the compensation act is remedial, we should not and cannot usurp the legislative province and attempt to reach a result by a judicial decree creating or enlarging a statutory right of action which can only be given or enlarged by the Legislature.

Judgment affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD and BURLING—4.

*For reversal*—Justices HEHER, JACOBS and BRENNAN—3.