35 N.J. Super. 59 (1955)
113 A.2d 177
NORMAN G. SECOR, PETITIONER-APPELLANT,
v.
PENN SERVICE GARAGE, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 14, 1955.
Decided April 1, 1955.
*61 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Jules J. Kelsey argued the cause for petitioner-appellant (Messrs. Kelsey & Kelsey, attorneys; Mr. Arthur S. Kelsey on the brief).
Mr. Carl Kisselman argued the cause for respondent (Mr. Alex P. Schuenemann, 3rd, attorney).
The opinion of the court was delivered by CLAPP, S.J.A.D.
The petitioner in this workmen's compensation case was allowed compensation in the Division; the County Court reversed, and he now appeals to us.
Petitioner, an attendant at a garage, was injured on his second day on the job. While putting gasoline in a car, the gasoline, due to air in the tank, gushed out over his trousers and right sleeve. Respondent (in the main we accept respondent's account of the incident) told him to change his uniform; and accordingly petitioner went into the office, he says, for that purpose.
There respondent showed him where the dry uniforms were kept, and speaking of the danger of gasoline (the employee was 23 years of age), repeated himself, saying "I'd be very happy if [you] changed [your] trousers." Perhaps in mock bravado, petitioner replied "he wasn't afraid of that stuff" (gasoline). Taking out a book of paper matches, he lit one, and holding it with his right hand, put it near his left knee. His clothes caught fire, and he was injured.
According to respondent, petitioner put the flaming match two to three inches (according to petitioner, it was one foot) from his knee. It may be that radiation from its heat would not reach a distance of two inches to the side, and that in fact his right sleeve, being above the flame, was ignited first. But we need not stop on this. On the appeal respondent does *62 not charge petitioner with the intentional infliction of injuries on himself. N.J.S.A. 34:15-7; cf. Restatement of Torts § 13(d); 31 C.J.S., Evidence, § 135, p. 772.
Nor (in view of the direction of the argument here) should much attention be given to the question whether petitioner's accident arose "out of * * * his employment" (N.J.S.A. 34:15-7). It has been said repeatedly that if the employment is a contributory cause, the accident arises out of it; it need not be the proximate or the primary cause, so long as it is a necessary factor. Sanders v. Jarka Corp., 1 N.J. 36 (1948); Spindler v. Universal Chain Corp., 11 N.J. 34, 39 (1952); Gargiulo v. Gargiulo, 13 N.J. 8, 13 (1953); Cierpial v. Ford Motor Co., 16 N.J. 561, 566 (1954). The gasoline on petitioner's clothes was one of the causes contributing to the accident, a necessary factor thereto, and it follows that the accident arose out of the employment.
As held in Gargiulo v. Gargiulo, supra (where an employee was injured by an arrow shot by a boy in the neighborhood), the question is not whether the accident was foreseeable, but whether it has its origin, at least in part, in a condition connected with the employment. If such is its origin, an accident is compensable even though the immediate moving force is some entirely voluntary act, uncalled for by the employment  such as the shooting of the arrow, or an assault on the employee, a truck driver, by another truck driver as a result of a collision of their trucks in the course of the employment. Sanders v. Jarka Corp., supra.
We do not pass upon the question whether some foolish action of the employee, unwanted by the employer, yet springing from human propensities or "human behavior as we find it" (Giracelli v. Franklin Cleaners & Dyers, Inc., 132 N.J.L. 590 (Sup. Ct. 1945)) on the job, can be said to arise out of the employment merely because it constitutes a by-product inherent in the employment of men. Here the accident arises not only from such propensities, but from one of the conditions of the employment, which was planted therein by the employer, namely, the presence of the gasoline.
*63 But this is not the case in which to continue on with this interesting inquiry. The respondent conceded in the County Court that the accident arose out of the employment, and it did not dispute the point on the argument here. On the contrary, in its brief it seems to say that the instant matter involves merely the application of settled notions as to the "course of * * * employment," as those notions are defined in Bryant, Adm'x., v. Fissell, 84 N.J.L. 72 (Sup. Ct. 1913).
To be within the course of employment, the accident must arise, not only within a certain period of time and at a place petitioner may reasonably be during that period, but also in the course of an activity reasonably a part of the conditions of the employment. We are concerned here, not with matters of time and place, but with the nature of petitioner's activity.
The most recent case of the Supreme Court turning, in part, on this last matter is Robertson v. Express Container Corp., 13 N.J. 342 (1953), which of course is binding here. There the court had this to say (p. 347);
"Compensability in so-called `curiosity cases' depends largely on whether or not what the employee was doing at the time of the injury was a momentary or impulsive act or a deliberate and conscious excursion involving deviation from the usual place of employment, in this instance, from the place where petitioner was accustomed to eat her lunch" (Italics added).
To put this in more general terms, the distinction is between a momentary or impulsive act, and a deliberate and extensive excursion from the employment. The employer in the case sub judice spoke of the act as "instantaneous," saying that, all told, from the second time he asked petitioner to change his clothes until the injury, only about a minute elapsed. In respondent's graphic words,
"he [petitioner] said he wasn't afraid of that stuff, struck a match, put it to his leg  boom! It went up * * * At first I was stunned * * * I mean see a fellow strike a match, igniting himself in front of you, you'd never believe it unless you saw it." *64 Surely the act here was of the momentary or impulsive sort; it was not an extensive excursion.
The statute does not lay down one rule for curiosity cases, another rule for horseplay and a third for assaults; the governing precepts are the same throughout.
Respondent makes reference to the matter of horseplay. But we need not deal with the several problems raised in such a matter, see 1 Larson, Workmen's Compensation Law (1952), § 23, except to note that it has been held in this state, with respect to circumstances of horseplay, that
"* * * while an accident, happening in such circumstances, may arise in the course of, it cannot be said to arise out of employment" (Italics in original). Hulley v. Moosbrugger, 88 N.J.L. 161, 169 (E. & A. 1915).
See Budrevie v. Wright Aeronautical Corp., 135 N.J.L. 46 (Sup. Ct. 1946), affirmed 136 N.J.L. 198 (E. & A. 1947) and Savage v. Otis Elevator Co., 136 N.J.L. 419 (Sup. Ct. 1948), also quoting these words. But cf. Larson, supra, § 23.61; Horovitz, 41 Ill. L. Rev. 311, 315 (1946), also 3 NACCA L.J. 15, 55 (1949).
We emphasize the words not italicized in the above-quoted passage. We need not consider questions of causation in connection with horseplay, for as already stated, we are concerned now with the course of employment. As Larson has noted, a controversy over the nature of a course of conduct voluntarily initiated by the claimant, primarily has to do with the "course of * * * employment"; while a controversy over the nature of a source of an accident to a claimant, primarily has to do with the question whether the accident arose "out of" the employment. 1 Larson, supra, § 23.61.
However, there is a horseplay case in this State that expressly turns, not on whether the accident arose "out of" employment, but on the "course of * * * employment." Colucci v. Edison Portland Cement Co., 94 N.J.L. 542 (E. & A. 1920). There the employee went 100 yards away *65 from the place of employment for a nap and had been asleep three hours and was still sleeping at the time of the horseplay. As the court held, "he had for the time abandoned his employment."
In the assault cases, the usual problem is with the matter of causation: does the assault arise "out of" the employment? But given the fact that, at least in some measure, it is work-connected in origin, the next question is whether the claimant himself, in any substantial way, has departed from the course of employment. Loss of temper accompanied by either profanity or some mildly offensive act (as, an unnecessary blowing of an automobile horn) on claimant's part, provocative in some manner of an assault, are impulsive departures, but clearly not of the substantial sort which take the claimant out of the course of employment. Sanders v. Jarka Corp., 1 N.J. 36 (1948), supra; Gerard v. American Can Co., 32 N.J. Super. 310 (App. Div. 1954); Augelli v. Rolans Credit Clothing Store, 33 N.J. Super. 146 (App. Div. 1954); 1 Larson, supra, § 11.15(a).
This doctrine, that a deviation in a certain limited measure does not take the employee out of the course of employment, is applicable not only to curiosity cases, horseplay and assaults, but also to foolhardy acts. In Miles v. Gibbs & Hill, Inc., 250 N.Y. 590, 166 N.E. 335 (Ct. App. 1929), affirming 225 App. Div. 839, 232 N.Y.S. 818 (1929), a trackman, whose job it was to walk a railroad track, struck a torpedo on the track with a hammer he was carrying, causing an explosion; and recovery was allowed. See Pedersen v. Nelson, 267 App. Div. 843, 45 N.Y.S.2d 784 (App. Div. 1944); Franck v. Allen, 270 App. Div. 960, 61 N.Y.S.2d 728 (App. Div. 1946); also Hall v. Carnegie Inst. of Tech., 170 Pa. Super. 459, 87 A.2d 87, 89 (Super. Ct. 1952), wherein the court speaks of "`an innocent or inconsequential departure from the line or place of duty.'"
We conclude then that in petitioner's very brief or impulsive act in the instant case, he had not abandoned his employment.
*66 Reversed, and judgment of Workmen's Compensation Division reinstated.
JAYNE, J.A.D. (dissenting).
In approaching the consideration of every workmen's compensation case in which the compensable character of the injury in the factual setting is the controversial issue, I recognize in particular the two basic postulates.
1. "Employers are not insurers of the lives, health and well being of their employees. The Legislature has not yet decreed that every death occurring or injury sustained in employment must be compensated for by the employer." Mergel v. N.J. Conveyors Corp., 14 N.J. 609, 613 (1954); Henderson v. Celanese Corp., 16 N.J. 208, 215 (1954); Cierpial v. Ford Motor Co., 16 N.J. 561, 564 (1954); Robertson v. Express Container Corp., 13 N.J. 342, 348 (1953).
2. "A liberal construction should be given to the Workmen's Compensation Act in order to alleviate consequences of personal injuries caused by employment and to effect a measure of economic security for the workmen so injured and to place the burden thereof on industry." Gargiulo v. Gargiulo, 13 N.J. 8, 13 (1953); Spindler v. Universal Chain Corp., 11 N.J. 34, 38 (1952).
When entering the twilight zone, it is confessedly difficult for me to place a foot in each of those buckets without upsetting either of them.
Expel, however, at once any notion that I do not appreciate the guidance of my learned associate judges, but I feel constrained to break loose from their conclusion in the circumstances of the present case.
I, too, accept the employer's account of the mishap and heed the decisions cited in the majority opinion.
I am not convinced that an injury sustained by an employee in the circumstances here disclosed by his deliberate act of placing a lighted match in close proximity to his trousers knowingly soaked with inflammable gasolene merely *67 to demonstrate his own lack of fear is compensable within the statutory intendment. As well might he have chosen to bite the nozzle of the hose to display the strength of his teeth.
I vote to affirm the judgment of the County Court.