JOHN McKENZIE, PETITIONER-APPELLANT, v. BRIXITE MANUFACTURING CO., RESPONDENT.

Argued November 7, 1960—Decided January 10, 1961.

(1)

*Mr. Fred Feinberg* argued the cause for petitioner-appellant (*Mr. Solomon B. Borsky,* attorney; *Mr. Fred Feinberg,* of counsel).

*Mr. Isidor Kalisch* argued the cause for respondent.

The opinion of the court was delivered by

SCHETTINO, J.   This is a workmen's compensation appeal.

The basic question is did petitioner's injury arise out of and in the course of the employment within the meaning of the Workmen's Compensation Act. *R. S.* 34:15–7 *et seq.* The Division of Workmen's Compensation and the County Court held that it did.   The Appellate Division, by a split

vote, held that it did not. 61 *N. J. Super.* 461 (1960). Petitioner appeals as a matter of right. *R. R.* 1:2–1.

As we view the record, the following facts are clearly established. Petitioner, on May 14, 1957, was in the employ of respondent as a granule mixer. A co-worker, Johnson, was engaged in scraping an empty barrel when petitioner walked by and playfully touched Johnson between his buttocks. The touching caused Johnson to turn suddenly, raise his arms impulsively and strike petitioner with a hot scraper causing the injury. Respondent was aware that such sportive touchings were common between these two employees as well as between other employees.

The issues are (1) Does customary horseplay add to the risk of employment, (2) Was the particular act momentary and impulsive and an inconsequential deviation from the course of the petitioner's employment; (3) Does *N. J. S. A.* 34:15–7.1 bar recovery by an aggressor-participant in skylarking incidents, and (4) Was the award of the attorney's fee by the County Court for services rendered on appeal excessive.

In *Tocci v. Tessler & Weiss, Inc.,* 28 *N. J.* 582 (1959), the court reviewed in detail the history of the judicial interpretation of the statutory words "out of and in the course of" the employment and concluded that the facts of each particular case must be examined and determination then made of whether the subject accident was "work-connected" or whether such accident was "unrelated" to the employment. It emphasized the liberal view taken by our courts in cases involving the "out of and in the course of" provision of our statute beginning with the rule laid down in *Bryant v. Fissell,* 84 *N. J. L.* 72 (*Sup. Ct.* 1913), wherein it was held that an accident arises out of the employment if it results from a risk "reasonably incidental" thereto.

The history of skylarking in the compensation field has been intriguing. *Hulley v. Moosbrugger,* 88 *N. J. L.* 161 (*E. & A.* 1915), denied recovery to an employee who was injured and died when he tried to dodge a fellow employee's

playful swing of an arm on the theory that the accident did not arise "out of the employment." The court held that the employer was not charged with the duty to see that none of his employees assaulted any other of them, either willfully or sportively. Such a holding was in line with the strict-construction approach to the workmen's compensation cases immediately after the enactment. See *Cole v. I. Lewis Cigar Mfg. Co.,* 3 *N. J.* 9, 16 (1949). But within three years thereafter our courts began to chip away at the *Hulley* ruling. In *Mountain Ice Co. v. McNeil,* 91 *N. J. L.* 528 (*E. & A.* 1918), the court, although denying recovery, implied that it would have awarded compensation if the employer countenanced or permitted the *specific* skylarking. This theory was referred to with approval in *Staubach v. Cities Service Oil Co.,* 126 *N. J. L.* 479, 482–483 (*Sup. Ct.* 1941), *certiorari* denied 127 *N. J. L.* 577 (*Sup. Ct.* 1942), affirmed 130 *N. J. L.* 157 (*E. & A.* 1943). There, an employee was fatally injured when another employee sportively threw gasoline used in the work operations on him. The court pointed out that had the employer had knowledge of the sportive activity, the injury would be a "natural incident of the work" and would be held to arise out of and in the course of employment. Accord, *Greene v. Watson Flagg Mach. Co.,* 25 *N. J. Misc.* 146 (*Dept. of Labor* 1947).

The next logical step was approached in *Secor v. Penn Service Garage,* 19 *N. J.* 315 (1955). There a garage attendant splashed gasoline on himself while servicing a car. His employer directed him to change into a clean uniform as gasoline soaked clothes were very dangerous. The employee struck a match near his clothes and the clothes instantly went up in flames resulting in severe injuries to himself. The court stated that, even if the employee committed the act foolishly and in a spirit of "mock bravado," he was entitled to compensation for (at *p.* 324):

"An employee is not an automaton, and, even when he is highly efficient, he will to some extent deviate from the uninterrupted performance of his work. Such deviation, if it be considered minor

in the light of the particular time, place and circumstance, is realistically viewed by both the employer and the employee as a normal incidence of the employment relation and ought not in this day be viewed as legally breaching the course thereof. Fulfillment of the high purposes of our socially important and ever broadening Workmen's Compensation Act suggests this approach and nothing in the statutory terms dictates any narrower position."

Mr. Justice Jacobs in that case noted that, although *Hulley* denied compensation, "the trend has been toward allowing compensation even to participating employees where their deviations may be said to be minor and attributable to normal human tendencies which men do not wholly shed simply because they are at work." (at *pp*. 320–321.)

Other jurisdictions have wrestled with this problem. In *Anderson & Kerr v. State Industrial Comm.*, 155 *Okl*. 137, 7 *P. 2d* 902 (*Sup. Ct.* 1932), the court affirmed an award of compensation for an injury held to have arisen out of and in the course of employment. In that case an employee was waiting for an assignment of duties and reading a newspaper when the foreman picked up a sample sack and threw it at him. There followed about ten minutes of frolicking and playing between the employee and the foreman with two sacks during which petitioner grabbed both sacks and ran towards the foreman. The foreman, seeing a gun lying on a work bench, picked it up to scare petitioner and shot into the ground. The bullet glanced up and struck petitioner in the spine. The court grounded its decision on the fact that for some years scuffling and frolicking by employees for pastime and recreation had occurred to the knowledge of the employer so that it became an established custom.

In *Maltais v. Equitable Life Assur. Soc.*, 93 *N. H.* 237, 40 *A. 2d* 837 (*Sup. Ct.* 1944), the employees of defendant's assured were accustomed, apparently with the employer's acquiescence, to clean their dusty work clothes with a compressed-air hose used by the employer in its business. Petitioner's decedent playfully used an air hose upon a fellow employee's clothes and hair. In turn the fellow employee

took the air hose and played it upon decedent's clothes and body. Inadvertently, he fatally injured decedent when he applied the hose to decedent's rectum. The court held that such conduct did not destroy petitioner's right to recover for compensation under the Workmen's Compensation Act as decedent's acts did not constitute serious misconduct or come within any of the prohibited actions barring compensation. Petitioner's recovery was based upon the theory that the injury could be properly deemed one arising out of and in the course of the employment as the practice, known or chargeable to the knowledge of the employer, constituted a part of the conditions of the employment.

New York also permits recovery by participants where the skylarking is customary and within the knowledge of the employer. *Ognibene v. Rochester Mfg. Co.*, 298 *N. Y.* 85, 80 *N. E.* 2d 749 (*Ct. App.* 1948); *Industrial Com'r v. McCarthy*, 295 *N. Y.* 443, 68 *N. E.* 2d 434 (*Ct. App.* 1946). Also see discussion of recent cases and other authorities in 22 *NACCA Law Journal* 175 (*Nov.* 1958).

As stated above the record clearly establishes respondent's knowledge of frequent playful touchings between petitioner and Johnson as well as between other employees. It never commanded its employees to stop these playful practices because, as was stated by the assistant plant superintendent, "it's something unfortunate that you can't stop." This course of conduct gained respondent's acquiescence and thus transformed an extra-employment skylark into an incident of employment. It is immaterial that petitioner was an active participant rather than an innocent victim.

The Appellate Division denied recovery on the ground that petitioner failed to sustain his burden "to establish by a preponderance of probabilities that the act of skylarking, considering the nature of it, and the time and place of its occurrence, was not such as could be said to be a consequential deviation from the course of the employment."

We disagree. From the reading of the record, the proofs are clear that respondent had countenanced a common prac-

tice of which the particular act was a part and that similar acts had taken place throughout respondent's plant. Nor can we agree with the Appellate Division that "when Johnson [the victim of the touching] was working with hot asphalt his fellow employees put the place where he worked in 'quarantine.'" (61 *N. J. Super.*, at *p.* 474). Factually, Johnson was not working with asphalt; he was bent over and was cleaning out a bucket which he had just emptied of asphalt. Additionally the only testimony regarding a possible "quarantine" was the testimony of respondent's assistant plant superintendent that: "Every man on the job knows that Walter Johnson is goosy; but when he is playing with a bucket of hot asphalt they stay away from him." We cannot find an agreement by petitioner's fellow employees "to quarantine" or any command by respondent that it had "quarantined" any part of the plant from its employees' skylarking.

■ Respondent additionally argues that petitioner's claim is barred by *N. J. S. A.* 34:15–7.1, *L.* 1956, *c.* 141, § 9, which provides:

> "An accident to an employee causing his injury or death, suffered while engaged in his employment but resulting from horseplay or skylarking on the part of a fellow employee, not instigated or taken part in by the employee who suffers the accident, shall be construed to have arisen out of and in the course of the employment of such employee and shall be compensable under the act hereby supplemented accordingly."

Respondent maintains that this statutory grant of compensation for injuries suffered by a non-participant in skylarking establishes an intention of the Legislature to bar instigators or participants in skylarking from recovery under the Workmen's Compensation Act.

We agree with the Appellate Division that "The plain wording of the statute as above set forth, emphasizes an intent to rectify the injustice of withholding compensation from the innocent victim of the sportive act of another (as was the case in *Hulley v. Moosbrugger,* 88 *N. J. L.* 161

(*E. & A.* 1915)), whether or not such act was a part of a common practice of which the employer knew or should have known" and we agree with the County Court that "To adopt respondent's contention would in effect be turning back the clock of progress and nullify the liberal interpretation of remedial legislation as intended by the Legislature."

It is reasonable to assume that the Legislature had before it in 1956 the judicial interpretations of the classes of accidents which caused injuries compensable under the Workmen's Compensation Act. One of the classes expressly excluded by the courts' decisions was an accident to the so-called "innocent victim" of skylarking and horseplay. The Legislature in its wisdom decided by clear language to eliminate this judicial limitation and, thus, to include this victim in the benefits of the act. It focused the employee intended to benefit by this amendment by defining the specific "accident" as one "resulting from horseplay and skylarking on the part of a fellow employee, not instigated or taken part in by the employee who suffers the accident." It limited its amendatory statute to that narrow field and we cannot find any legislative intent to change the original act any further than as expressly declared. See 1 *Sutherland, Statutes and Statutory Construction* (*3d ed., Horack,* 1943), 412, 414–415, § 1930. We find no reason to invoke the maxim, *expressio unius est exclusio alterius.* See *Reilly v. Ozzard,* 33 *N. J.* 529 (1960). We cannot find a legislative intent that by favoring one class the Legislature intended to exclude other classes. *Cf. Gangemi v. Berry,* 25 *N. J.* 1 (1957).

We also note that when this amendment was passed, the cases, which discussed skylarking practices within the knowledge of the employer, had already been decided. The amendment makes no reference to such situations and we cannot find a bar by implication.

The additional counsel fee award of $375 by the County Court is not excessive. The reasonableness (*R. R.* 5 :2–5 (*f*) ) is discretionary with the trial court and we cannot

find abuse of discretion on this record. *Neylon v. Ford Motor Co.*, 27 *N. J. Super.* 511 (*App. Div.* 1953).

Reversed with direction to re-instate the judgment of the County Court.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.