ANGEL M. DIAZ, PETITIONER-RESPONDENT, v. NEWARK INDUSTRIAL SPRAYING, INC., RESPONDENT-APPELLANT.

Argued September 26, 1961—Decided October 23, 1961.

*Mr. Isidor Kalisch* argued the cause for appellant.

*Mr. Francis H. Pykon* argued the cause for respondent (*Mr. Joseph P. Dunn,* attorney).

The opinion of the court was delivered by

SCHETTINO, J.  This is a workmen's compensation case appeal.  An award was granted petitioner, Angel Diaz, by the Division of Workmen's Compensation.  The County Court upheld the award, 60 *N. J. Super.* 424 (*Cty. Ct.* 1960), and the Appellate Division affirmed.  65 *N. J. Super.* 249 (*App. Div.* 1960).  We granted certification.  34 *N. J.* 465 (1961).

Diaz was injured on November 20, 1957 while in the employ of respondent.  Diaz was hosing down with water certain frames lying on the floor before him.  A fellow employee, Frank Waters, was working nearby within a radius of seven to ten feet.  Waters testified that Diaz twice playfully squirted water on Waters' legs.  After the first squirting, Waters warned Diaz that he would receive the same treatment if Diaz again squirted Waters.  There is evidence that Diaz probably did not understand Waters as Diaz did not speak or understand English.  A second squirting took place.  In retaliation Waters turned and threw at Diaz the contents of a pail of what he thought was water but was in fact lacquer thinner.  Almost immediately, an open flame under a nearby tank ignited Diaz's clothing and he was severely burned.  There is contradictory testimony but three tribunals agree that the injuries occurred as described and we see no reason to disturb these findings.

The employer contends that Diaz was engaged in skylarking and should be denied compensation because he failed to provide the link necessary to his case, *i. e.,* proof that the employer acquiesced in the skylarking which caused the injury.  It relies on *McKenzie v. Brixite Mfg. Co.,* 34 *N. J.* 1 (1961).  Diaz contends that his conduct was not such as to bar him from the benefits of the Workmen's Compensation Statute.

Unlike *McKenzie* the record here contains no proof that the employer had knowledge of the kind of activity which caused petitioner's injury, or indeed that any pattern of skylarking preceded the injury so that the employer could be constructively charged with knowledge thereof, or of any

knowledge or observation of prior skylarking by Diaz or the other employees. At oral argument both counsel said a rehearing would produce no additional testimony on the presence or absence of skylarking as a custom at respondent's place of business.

We hold that the facts presented here do not encompass the type of "skylarking" which bars recovery and hence the question of acquiescence by the employer is immaterial. Rather the case requires the application of a realistic view of reasonable human reactions to working conditions and associations with people encountered in the course of employment.

The history of judicial interpretation of the statutory words "out of and in the course of" the employment indicates clearly that upon the facts of each case a determination is made of whether the subject accident was "work-connected" or whether the accident was "unrelated" to the employment. In *Tocci v. Tessler & Weiss, Inc.,* 28 *N. J.* 582 (1959), we noted the emphasis of the liberal view taken by our courts involving the "out of and in the course of" provision beginning with the rule laid down in *Bryant v. Fissell,* 84 *N. J. L.* 72 *(Sup. Ct.* 1913), which stated that an accident arises out of the employment if it results from a risk "reasonably incidental" thereto.

We refer to some of the authorities in this field. In *Secor v. Penn Service Garage,* 19 *N. J.* 315 (1955), a garage attendant splashed gasoline on himself while servicing a car. His employer told him to change into a clean uniform as gasoline soaked clothes were very dangerous. The employee struck a match near his clothes and the clothes instantly went up in flames. We held that even if the employee committed the act foolishly in a spirit of "mock bravado," he was entitled to compensation. Mr. Justice Jacobs explained why (19 *N. J.,* at *page* 324) :

"An employee is not an automaton, and, even when he is highly efficient, he will to some extent deviate from the uninterrupted performance of his work. Such deviation, if it be considered minor in

the light of the particular time, place and circumstance, is realistically viewed by both the employer and the employee as a normal incidence of the employment relation and ought not in this day be viewed as legally breaching the course thereof. Fulfillment of the high purposes of our socially important and ever broadening Workmen's Compensation Act suggests this approach and nothing in the statutory terms dictates any narrower position."

Mr. Justice Jacobs also noted that in other jurisdictions the trend appears to be toward permitting recovery by the participant so long as the deviation can be considered minor. The center of inquiry has shifted from insulating the particular act in a vacuum to considering it in the entire nature of the employment, including the risks of human associations and failings and conditions inseparable from the specific work. For example, Judge Cardozo in *Leonbruno v. Champlain Silk Mills,* 229 *N. Y.* 470, 128 *N. E.* 711, 712, 13 *A. L. R.* 522 (*Ct. App.* 1920) stated:

"The risks of injury incurred in the crowded contacts of the factory through the acts of fellow workmen are not measured by the tendency of such acts to serve the master's business. Many things that have no such tendency are done by workmen every day. The test of liability under the statute is not the master's dereliction, whether his own or that of his representatives acting within the scope of their authority. The test of liability is the relation of the service to the injury, of the employment to the risk."

In *Hartford Accident & Indemnity Co. v. Cardillo,* 72 *App. D. C.* 52, 112 *F. 2d* 11, 15 (*C. A. D. C.* 1940), *certiorari* denied 310 *U. S.* 649, 60 *S. Ct.* 1100, 84 *L. Ed.* 1415 (1940) Judge Rutledge expounded the same philosophy as in *Secor:*

"[The employment] environment includes associations as well as conditions, and that associations include the faults and derelictions of human beings as well as their virtues and obediences. Men do not discard their personal qualities when they go to work. Into the job they carry their intelligence, skill, habits of care and rectitude. Just as inevitably they take along also their tendencies to carelessness and camaraderie, as well as emotional make-up. In bringing men together, work brings these qualities together, causes frictions between them, creates occasions for lapses into carelessness, and for fun-making and emotional flare-up. Work could not go on

if men became automatons repressed in every natural expression. 'Old Man River' is a part of loading steamboats. These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment."

Judge Desmond in his dissent in *Ognibene v. Rochester Mfg. Co.*, 298 *N. Y.* 85, 80 *N. E. 2d* 749, 750 (*Ct. App.* 1948) stated:

"I cannot agree that the inconsequential, sportive act of claimant * * * was such a complete deviation from his employment that he is barred from receiving workmen's compensation even though he was on an errand for his employer at the time, was in the employer's place of business and received his injuries from a piece of equipment belonging to his employer. No decided case goes so far as to dismiss such a claim.

* * * * * * *

The cases where employees who engaged in horseplay or fighting were denied compensation, involved instances where the injured persons deliberately provoked fights or, in some other fashion, deliberately and substantially stepped out of their employments to engage in some activity unrelated to their work."

Then, referring to the argument that no custom of sky-larking existed in that case (80 *N. E. 2d*, at *page* 751):

"Numerous awards have been upheld where no such test was made or suggested. The courts (see *Matter of Leonbruno v. Champlain Silk Mills*, 229 *N. Y.* 470, 472, 138 [128] *N. E.* 711, 13 *A. L. R.* 522), without proof of the particular usages of any one factory or shop, realize, as does everyone else, that 'a little nonsense now and then, is relished by the best of men.' To say that this claimant, by [a] trifling act of foolery, stepped completely out of his role as workman and became an aggressor in an encounter during which he was hurt, would be to magnify unfairly what was a most insignificant antic."

We agree with this philosophy.

Another factor which aids petitioner is that Waters poured upon Diaz material (lacquer thinner) which was used in the employment and not an item foreign to the employer. Such an inflammatory item is an additional risk inherent in this employment and without this risk the injuries to Diaz would not have taken place.

In summary, this case fits into the *Secor* theme. Setting aside the fact that one using a water hose has an almost uncontrollable urge to spray a passer-by, here the petitioner impulsively provoked a coemployee and was soaked by a can of inflammable liquid, thought to be water. In *Secor* the work caused a soaking of the clothing and impulsive foolishness set the victim on fire. In *Diaz* the foolishness caused the inflammable soaking and the work flame set fire to the employer's lacquer thinner injuring petitioner. The act of the claimant in each case was humanly impulsive and relatively minor. *Larson, Workmen's Compensation,* § 23.61, *p.* 356.

Affirmed.

FRANCIS, J. (concurring). I concur in the result reached by the court. On the facts of the case, however, I prefer to place the liability of the employer on a somewhat different basis. Assuming that horseplay occurred, it seems obvious that the petitioner's injury resulted from the concurrence of that activity and an employment hazard chargeable to the employer. Put in terms usually appearing in the cases, the employment constituted a contributory cause. After petitioner had twice squirted his fellow worker, the retaliation took a form entirely unintended. The fellow worker picked up a pail containing what he believed to be water and threw the contents over petitioner. The contents, unknown to the thrower, were a highly inflammable lacquer thinner provided by the employer and used in the regular course of its work. A nearby open burner flame immediately ignited petitioner's clothes, causing his severe burns. In such a situation, even though petitioner instigated the horseplay, the fortuitously untoward result, wholly unintended and not reasonably to be expected, following in the wake of the fellow employee's act, should not cancel out the benefits of the statute. Such injury is not due to horseplay. *Cf. Kulinka v. Flockhart Foundry Co.,* 9 *N. J. Super.* 495 (*Cty. Ct.* 1950); affirmed *Bujalski v. Flockhart Foundry*

*Co.*, 16 *N. J. Super.* 249 (*App. Div.* 1951); certification denied 8 *N. J.* 505 (1952).

FRANCIS, J., concurring in result.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For reversal*—None.