144 N.J. Super. 430 (1976)
365 A.2d 1374
RICHARD TROTTER, PETITIONER-APPELLANT,
v.
COUNTY OF MONMOUTH, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 21, 1976.
Decided October 1, 1976.
*431 Before Judges HALPERN, ALLCORN and BOTTER.
Mr. Paul X. McMenaman argued the cause for appellant.
Mr. John W. O'Brien argued the cause for respondent (Messrs. O'Brien, Brett, Martin & Leitner, attorneys).
The opinion of the court was delivered by BOTTER, J.A.D.
This is an appeal from the denial of workers' compensation benefits. Petitioner suffered serious, disabling injuries in a motorcycle accident which he contends arose out of and in the course of his employment. N.J.S.A. 34:15-7. At the conclusion of proofs the judge of *432 compensation made the following findings which are supported by substantial, credible evidence:
The petitioner Richard Trotter, was a 21 year old employee of the County of Monmouth earning $110.00 a week on July 17, 1972 when he suffered injuries which rendered him totally disabled.
A great deal of testimony was taken as to the question of the time of the accident. The County of Monmouth Road Department, for which the petitioner worked, had a quitting time of 4:30 p.m.
The uncontradicted testimony of several witnesses was to the effect that the petitioner worked that day cutting grass and returned to the County garage with one John Adcock in a County truck around 4:00 p.m.
It was clear from the testimony that the weather was very hot and the temperature approximated 90 degrees.
When the petitioner returned to the County garage most of the road department employees had returned from their various working locations.
The petitioner and John Adcock thereafter went to the side of the garage and used the spigot and water pail to throw water on each other in an effort to cool off.
John Adcock was also the owner of a 1970 Honda motorcycle, Model CB 175, and at the time of the incident was thinking of selling the bike and getting a new one and was in fact looking for buyers.
Testimony disclosed that the petitioner did not own a motor vehicle but in fact drove a bicycle to and from work.
After the water throwing incident the petitioner went over to the cycle and sat on it. There was no testimony of any conversation at the time as to the sale or purchase of the motor bike.
John Adcock then started the motorcycle and went into the garage to get his helmet. While Adcock was inside the petitioner started to ride the motorcycle away from the County garage.
The witness, Adcock, attempted to stop the petitioner and in fact, yelled at the petitioner but he wasn't able to stop him.
Trotter than proceeded off County property on to the adjoining property and then returned and then passed back in front of the County garage. He apparently had the bike well under control for a period of two or three minutes.
During this time the foreman of the County Road Department, Eden B. O'Hare, observed the petitioner on the cycle and yelled for the petitioner to get off the cycle because he was afraid that the petitioner would be hurt and that he was performing this activity during working hours. He testified that he had not dismissed the men at this point.
The foreman then proceeded back to the garage to shut the doors since it was near quitting time. He then testified that he had dismissed the men at 4:30 but that he could not dismiss the petitioner, Trotter, since he could not tell him to leave because of the fact he *433 was on the cycle. The next thing the foreman testified to was the fact that he saw the petitioner laying (sic.) next to a telephone pole across the street from the County garage and at that point an ambulance was called for.
I am, therefore, satisfied that the accident did, in fact occur during the working hours of the petitioner since the foreman, O'Hare, concluded his testimony by saying that the petitioner "dare not leave without me telling him".[1]
The closest observer to the actual happening of the accident was Anna Dalgarno, who was sitting in a motor vehicle in front of the County garage waiting for her husband to finish work when she heard the sound of a motor and then observed the petitioner crossing in front of her car and thereafter observed the petitioner "ski jump" over the berm onto the roadway and lose control of the bike and thereafter winding up against the pole on the opposite side of the roadway.
I am, therefore, of the conclusion that the accident occurred on the premises of the respondent since the control of the vehicle was lost on County property.[2] The sole question remaining for the Court's determination is whether or not the accident was "work-related."
Patrolman Savage testified that that (sic.) petitioner pled guilty to a motor vehicle charge of operating a motorcycle without a motorcycle license in Municipal Court. * * *
The facts in this incident are that the petitioner was finished with his day's work and [a]waiting dismissal when he drove a company employee's [co-employee's] motorcycle without the permission of the employee, for his own personal use.
In denying benefits the judge of compensation expressed the view that to find the employer liable for petitioner's injuries here would in effect require the employer to be a guarantor of the safety of the employee regardless of his own conduct.
Injuries during employment resulting from "horseplay or skylarking on the part of a fellow employee, not instigated or taken part in by the employee who suffers the accident" are clearly compensable. N.J.S.A. 34:15-7.1. This section has not precluded recovery for injuries suffered *434 by an employee resulting from such activity voluntarily engaged in or instigated by the injured employee. Diaz v. Newark Industrial Spraying, Inc., 35 N.J. 588 (1961); McKenzie v. Brixite Mfg. Co., 34 N.J. 1 (1961). In both of these cases, however, additional circumstances existed which made the injury particularly work-related. For example, in Diaz the petitioner was burned when lacquer thinner, with which he was doused by a coemployee, ignited. The dousing was in retaliation for water squirted at the coemployee by petitioner. But the fact that lacquer thinner was used, mistakenly, was peculiarly related to the employment because it was a product used at work. Similarly, in McKenzie, petitioner was injured by a hot scraper being used at work by a coemployee who reacted to a provoking prank played by petitioner. There the court noted the added circumstance that the employer was aware of such "sportive touchings" among employees. See also Secor v. Penn Service Garage, 19 N.J. 315 (1955).
In 1 Larson, Workmen's Compensation Law, § 23.00 and § 23.20 (1972), various limiting rules are discussed in relation to injuries resulting from an employee's own horseplay or instigation of horseplay. Some jurisdictions bar recovery in such instances absolutely. In others, recovery depends upon:
(1) the extent and seriousness of the deviation, (2) the completeness of the deviation (i.e., whether it was commingled with the performance of duty or involved an abandonment of duty), (3) the extent to which the practice of horseplay had become an accepted part of the employment, and (4) the extent to which the nature of the employment may be expected to include some such horseplay.
Horseplay usually connotes two or more employees fooling around with one another. Richardson v. J. Neils Lumber Co., 136 Mont. 601, 341 P.2d 900 (Sup. Ct. 1959). However, it would be reasonable to include within its scope conduct of one employee alone, who, for example, injures himself in foolhardy display of bravery to fellow workers. *435 Cf. Secor v. Penn Service Garage, supra. See also 1 Larson, Workmen's Compensation Law, supra, § 23.65, n. 76 at 5-137. Here the evidence does not show that petitioner's conduct was horseplay in the sense that it was directed at or was instigated by coworkers. Petitioner apparently rode the motorcycle, contrary to the wishes of its owner, for his own satisfaction. The vehicle was not supplied by his employer and was not equipment used in the course of the employer's business. While idleness, in waiting to be dismissed, may induce horseplay, petitioner's conduct was so far a deviation as to constitute an abandonment of his employment. He rode the motorcycle off the employer's premises. This was not a minor interruption in work that was to be resumed. Petitioner's work had ended, except for his formal discharge when the working day terminated.
It is difficult to fashion a single test to separate compensable deviations in employment from those which are not compensable. The dividing line between minor and major deviations is not readily visible; surely the answer cannot depend on the seriousness of the injury. In this case we are satisfied that a combination of factors mentioned above warrants the denial of compensation.
Affirmed.
NOTES
[1] Records of the Monmouth County radio dispatcher showed that the first report of the accident was received by him at 4:30 p.m.
[2] The berm was on county premises but the telephone pole which petitioner struck was outside the premises.