707 A.2d 1372

NELSON QUINONES, PETITIONER–RESPONDENT, v. P.C. RICHARD & SON, RESPONDENT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 18, 1998—Decided March 24, 1998.

Before Judges LONG, STERN and LESEMANN.

*Thomas D. Capotorto,* argued the cause for appellant P.C. Richard & Son (*Marie Rose Bloomer,* attorney; *Mr. Capotorto,* on the brief).

*Douglas E. Schwartz,* argued the cause for respondent Nelson Quinones (*David J. Zendell,* attorney; *Mr. Schwartz,* on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

Respondent employer P.C. Richard & Son ("the employer" or "respondent") appeals from a partial permanent disability award of 25% for orthopedic and radial neuropathy "residuals of spiral fracture of the right humerus with scarification." It contends that

the injuries are not compensable. We agree and reverse the judgment of the Division of Workers' Compensation.

Because we agree with the employer that the injury is not compensable even giving petitioner the benefit of all legitimate factual inferences favorable to his position, we incorporate petitioner's recitation of the facts adduced at the hearing:

On May 23, 1994, petitioner Nelson Quinones was employed by respondent P.C. Richard & Sons as a stock person.

On the aforementioned date, petitioner reported to work at approximately 4:00 p.m. It was petitioner's intent to do his regular job which included replacement of stock items.

Petitioner was in the course of his usual job activities when his supervisor, [Ronald Landstrom], approached him. Petitioner's supervisor asked petitioner whether he wanted to arm wrestle.

Petitioner proceeded to arm wrestle with his supervisor. Petitioner sustained injury. The accident occurred during petitioner's working hours. At the time of the incident, the store was still open. The manager of the store was in the area, as were salespeople and customers.

Petitioner had worked for respondent for approximately a year and one-half to two years. During that time, arm wrestling occurred on a regular basis. Many employees participated in this activity, including sales persons, stock persons, and managers.

Prior to the date of accident, petitioner had engaged in arm wrestling with his supervisor, Ronny. He had done so on approximately four to five times prior to the date of accident. Many employees arm wrestled and the competition at the store was like a tournament. Arm wrestling would occur both during breaks and during working hours.

Many of the above facts were corroborated by respondent's assistant store manager, Ronald Landstrom, who admitted in his testimony at trial to having engaged in an arm wrestling match with petitioner on the date in question. Respondent's assistant store manager admitted that arm wrestling did occur at the store prior to the accident in question perhaps every couple of weeks or two to three times per month. Petitioner's supervisor indicated that "[j]ust a few of the guys ... with the egos ... the strongest guy in the store type of thing" were the employees who usually participated in the arm wrestling. Landstrom admitted that he had engaged in arm wrestling on prior occasions and had engaged petitioner in arm wrestling on prior occasions.

During the incident on May 23, 1994, Petitioner sustained a serious spiral fracture of the right arm with residual scarification.

[ (Citations and footnote omitted).]

There was a dispute as to whether the store had closed before the arm wrestling began and as to whether petitioner or the

assistant store manager, Ronald Landstrom, initiated the contest. Landstrom testified that the activity commenced "after closing" as petitioner was leaving and that petitioner initiated the contest. According to Landstrom, petitioner approached him, "said am I ready, and put his elbow up on the podium in the front of the store" to start the contest. Landstrom also testified that arm wrestling occurred "once every couple of weeks or two, three times a month," and admitted that he arm wrestled with petitioner "on prior occasions." Landstrom also testified that the activity was "[a]bsolutely not" "endorsed" or approved by the employer.

Petitioner claims that his "injuries are compensable" under *N.J.S.A.* 34:15–7.1, which provides:

> Horseplay or skylarking on part of fellow employees
>
> An accident to an employee causing his injury or death, suffered while engaged in his employment but resulting from horseplay or skylarking on the part of a fellow employee, *not instigated or taken part in by the employee who suffers the accident,* shall be construed to have arisen out of and in the course of the employment of such employee and shall be compensable under the act hereby supplemented accordingly.
>
> [ (Emphasis added and footnote omitted).] [1]

The statute provides for workers' compensation benefits for injuries "resulting from horseplay or skylarking" only if the injured employee had "not instigated or taken part in" the horseplay or skylarking. The judge of compensation, however, granted benefits noting that it has "been consistently held that Section 7.1 does not bar recovery for injuries sustained by an employee who instigated skylarking where skylarking practices were known by the employer." The judge quoted extensively from *Secor v. Penn Service Garage,* 19 *N.J.* 315, 117 *A.*2d 12 (1955), in ruling for petitioner.

---

[1] "Skylark" means "[t]o indulge in hilarious or boisterous frolic." *Funk & Wagnalls, International Dictionary of the English Language* (1978). The index to Arthur Larson, *The Law of Workmen's Compensation* (1985), treats it as "horseplay." The index to *Larson's Workers' Compensation* (Desk Reference 1997) does not refer to "skylarking."

In *Secor, supra*, the Supreme Court concluded that injuries sustained by an employee who was burned when he lit a match after his clothes were "splashed" with gasoline while filling a gas tank arose out of and in the course of his employment. *Id.* at 316, 323–24, 117 *A.2d* 12. *See N.J.S.A.* 34:15-7. The parties disputed whether petitioner was lighting a cigarette or trying to impress his employer with his fearlessness when he lit the match and ignited his clothes. *Id.* at 324, 117 *A.2d* 12. In deciding that the injuries, under either party's version, were "sufficiently work-connected and may fairly be said to have been an injury by accident arising out of and in the course of his employment," *id.* at 324, 117 *A.2d* 12, Justice Jacobs noted that the trend in workers' compensation cases had "been toward allowing compensation even to participating employees where their deviations may be said to be minor and attributable to normal human tendencies which men do not wholly shed simply because they are at work." *Id.* at 320–21, 117 *A.2d* 12. The *Secor* Court further stated:

> The evidence does not warrant any inference of deliberate disobedience of an order of his employer, *cf. Green v. DeFuria*, [19 *N.J.* 290, 116 *A.2d* 19 (1955) ]; *Waskevitz v. Clifton Paper Board Co.*, [7 *N.J.Super.* 1, 71 *A.2d* 646 (App.Div.1950) ], and even though his action in lighting the match for the assumed purpose be deemed grossly negligent and foolhardy it would nonetheless have been taken in the belief that it was in furtherance of the employer's interests. See *Green v. DeFuria, supra.* More troublesome is the question presented by the assumption that Secor was not motivated by either of the aforestated purposes but simply lit the match in a spirit of "mock bravado." See [*Secor v. Penn Service Garage,*] 35 *N.J.Super.* [59] at *page 61* [113 *A.2d* 177]. But even here, the compelling principles underlying the modern authorities, particularly the so-called "curiosity cases," lend adequate support for the compensation award to the employee. The evidence established that, in any event, Secor's deviation from the course of his ordinary work was not an intentional abandonment of his employment but simply a "momentary or impulsive act"—it was not a "deliberate and conscious excursion" within *Robertson v. Express Container Corp.*, [13 *N.J.* 342, 99 *A.2d* 649 (1953) ]. An employee is not an automaton, and, even when he is highly efficient, he will to some extent deviate from the uninterrupted performance of his work. Such deviation, if it be considered minor in the light of the particular time, place and circumstance, is realistically viewed by both the employer and the employee as a normal incidence of the employment relation and ought not in this day be viewed as legally breaching the course thereof.

[*Secor, supra,* 19 *N.J.* at 323–24, 117 *A.2d* 12.]

*Secor* did not involve nor consider *N.J.S.A.* 34:15–7.1. However, language in another Supreme Court case cited by the judge of compensation supports his conclusion. *See McKenzie v. Brixite Mfg. Co.*, 34 *N.J.* 1, 3, 166 *A.2d* 753 (1961), where the petitioner's "playful touching" of an employee whose reaction injured petitioner was held compensable when the employer "was aware that such sportive touchings were common between these two employees as well as between other employees." But there the Court determined that the employer's "knowledge of frequent playful touchings" constituted "acquiescence" in a "course of conduct . . . and thus transformed an extra-employment skylark into an incident of employment." The Court further concluded in that setting that it was "immaterial that petitioner was an active participant rather than an innocent victim." 34 *N.J.* at 6, 166 *A.2d* 753.[2] *Brixite* was concerned with the legislative intent evidenced by the statutory complex at the time *N.J.S.A.* 34:15–7.1 was adopted in 1956. *Id.* at 7–8, 166 *A.2d* 753. It held that that statute was designed to permit recovery by non-participant " 'innocent victims' of skylarking and horseplay" and was not intended to change the law permitting recovery for injuries resulting "from skylarking activities within the knowledge of the employer." *Id.* at 8, 166 *A.2d* 753. Thus, while our statute permits a non-participant to recover for workplace injuries caused by "horseplay" and "skylarking," *N.J.S.A.* 34:15–7.1; *see also Larson's Workers' Compensation* (Desk Reference 1997) § 23.10, *Brixite*[3] permits the instigator or

---

[2] The judge of compensation also cited *Diaz v. Newark Indus. Spraying, Inc.*, 65 *N.J.Super.* 249, 167 *A.2d* 662 (App.Div.1961), which was a "skylarking" case resulting in recovery, but there affirmance of the recovery was based on *Brixite*. The Supreme Court subsequently affirmed *Diaz*. *Diaz v. Newark Indus. Spraying, Inc.*, 35 *N.J.* 588, 174 *A.2d* 478 (1961).

[3] *See also Diaz v. Newark Indus. Spraying, Inc.*, 35 *N.J.* 588, 174 *A.2d* 478, where petitioner sprayed a co-worker with water. In return, the co-employee threw the contents of a pail at petitioner thinking that it also contained water. The pail turned out to contain a lacquer thinner, and petitioner was ignited by a nearby open flame. The Court held "that the facts [did] not encompass the type of 'skylarking' which bars recovery and hence the question of acquiescence by

participant to nevertheless recover if the accident is compensable under *N.J.S.A.* 34:15-7.

In this case, the judge of compensation correctly understood the law governing skylarking and horseplay. However, his decision failed to recognize that different standards apply to "recreational and social activities" and that they control this case. Unlike horseplay and skylarking which essentially deal with "two or more employees fooling around with one another," *Trotter v. County of Monmouth*, 144 *N.J.Super.* 430, 434, 365 *A.2d* 1374 (App.Div.), *certif. denied*, 73 *N.J.* 42, 372 *A.2d* 308 (1976) (such as "playful touching" (*Brixite, supra*, at 6, 166 A.2d 753), spraying water (*Diaz, supra* ), or shooting staples, (*Clodgo v. Rentavision, Inc.*, 701 *A.2d* 1044 (Vt.1997)), "social and recreational activities") have an entirely different significance in the workplace. They are customary or planned activities occurring during the lunch hour, coffee breaks, recreational periods or outings. *Sarzillo v. Turner Constr. Co.*, 101 *N.J.* 114, 117-21, 501 *A.2d* 135 (1985). *See also Cotton v. Worthington Corp.*, 192 *N.J.Super.* 467, 468-69, 471 *A.2d* 56 (App.Div.), *certif. denied*, 96 *N.J.* 301, 475 *A.2d* 593 (1984) (no recovery for injury sustained during softball game even though employer supplied the "team composed of Worthington employees ... with baseball caps with the Worthington logo ...." ).

In our view, this case involves a "recreational activity" and the work related injury is not compensable under *N.J.S.A.* 34:15-7.

In 1980 *N.J.S.A.* 34:15-7, which provides for workers' compensation for an injury "arising out of and in the course of employment," was amended to prohibit recovery for injuries suffered during "recreational or social activities, unless such recreational or social activities are a regular incident of employment and produce a benefit to the employer beyond improvement in employee health

---

the employer [was] immaterial." 35 *N.J.* at 590, 174 *A.2d* 478. Recovery was upheld in light of *Secor*, and *N.J.S.A.* 34:15-7.1 was not addressed.

and morale. . . ." *See L.* 1979, *c.* 283, § 1 (effective January 10, 1980). In *Sarzillo, supra,* 101 *N.J.* at 121–23, 501 *A.*2d 135, the Supreme Court held that an employee could not collect for a torn Achilles tendon suffered during the course of a Ka-nocka [4] game played by employees during a lunch hour. The Court held that the amendment to *N.J.S.A.* 34:15–7 was "intended to tighten, clarify, or eliminate the availability of worker's compensation for injuries sustained during recreational or social activities," 101 *N.J.* at 120, 501 *A.*2d 135, and that to recover for such recreational or social activity, the petitioner had to show both that the activity was "a regular incident of employment" and produced "a benefit to the employer beyond improvement in employee health and morale." *Id.* at 119, 501 *A.*2d 135. *Sarzillo* satisfied neither prong, even though the employer knew about the activity and allowed it to continue on the premises.

To be compensable, the work-related accident must occur both "in the course of" and "arise out of" the employment. *Coleman v. Cycle Transformer Corp.,* 105 *N.J.* 285, 289–90, 520 *A.*2d 1341 (1986) (denying recovery when an employee during lunch hour ignited her hair while lighting a match because it did not "arise out of" the employment). Here, we recognize that this accident involving arm wrestling at work would not have occurred "but for" petitioner's employment with P.C. Richards, *see Coleman, supra,* 105 *N.J.* at 291, 520 *A.*2d 1341, and involved the active partic- ipation of the store manager on duty. However, injuries which occur during a recreational activity, such as the arm wrestling involved in this case, must now meet both prongs of the *Sarzillo* test, and even assuming that the arm wrestling here qualifies as "a regular incident of employment," it cannot fairly be said on this record that it produced "a benefit to the employer beyond im- provement in employee health and morale." *See Sarzillo, supra,* 101 *N.J.* at 119, 501 *A.*2d 135. Accordingly, we reverse the award of compensation to petitioner.

The judgment is reversed.

---

[4] Ka-nocka is a paddle game similar to tennis. *Id.* at 116, 117 *A.*2d 12.