ROBERT C. SARZILLO, PETITIONER-RESPONDENT, v. TURNER CONSTRUCTION COMPANY, RESPONDENT-APPELLANT.

Argued September 23, 1985—Decided November 26, 1985.

*Thomas E. Miller* argued the cause for appellant (*Robert G. Bressler,* attorney).

*John R. Lanza* argued the cause for respondent (*Thatcher & Lanza,* attorneys).

The opinion of the Court was delivered by

GARIBALDI, J.

The Workers' Compensation Law, *N.J.S.A.* 34:15–7, as amended effective January 10, 1980, bars workers' compensation for an injury suffered in recreational or social activities, unless such activities "are a regular incident of employment and produce a benefit to the employer beyond improvement in employee health and morale...." We must determine whether the injury suffered by petitioner in a lunchtime recreational activity is compensable under this law.

I

At the time of the accident, petitioner, Robert Sarzillo, was employed by respondent, Turner Construction Co., as a journeyman-carpenter at a construction site in Bedminster Township. His working hours were from 8:00 a.m. to 3:20 p.m., with a paid lunch break from 11:50 a.m. to 12:30 p.m.

Approximately 1,500 feet from the area where Sarzillo was working, there was a food trailer (not owned by Turner) where employees could buy sandwiches and sodas. The nearest res-

taurant was two miles from the site. Sarzillo testified that he always brought his own lunch on this job. On the day of the accident, Sarzillo and three of his co-workers were eating lunch in the basement of the building in which they were working. The employees were allowed to eat at their job locations.

For the three months he was at the job site, Sarzillo and some of his co-workers played "Ka-nocka" 12 or 15 times during their lunch break. Ka-nocka is a paddle game similar to tennis, played with wooden paddles and a rubber ball. No equipment was furnished by Turner. Sarzillo and his co-workers brought the paddles and the ball. Sarzillo testified that his foreman had seen the game played and had not objected to it.

During his lunch break on April 20, 1982, Sarzillo played Ka-nocka. When reaching down to hit the ball, he slipped and ruptured an Achilles' tendon. The Judge of Compensation concluded that petitioner's recreational injury was compensable, finding that:

[He] was, in effect, required to eat his lunch at the job site, since he would have been unable to leave the job site to go to a restaurant and return in time to resume work at the required time.... The fact is that any construction workers have to get along with each other and are entitled to have some physical exercise as well as food during their breaks and including the lunch break; that the respondent condoned this activity and never ordered these employees to cease....

The Appellate Division, 198 *N.J.Super.* 29, 31 (App.Div.1984) affirmed the judge's findings as being reasonably reached on substantial credible evidence in the record as a whole. The court further held that the facts fully supported the conclusion that the Ka-nocka game satisfied both criteria of the statutory exception: one, it was a recurrent lunchtime recreational activity, and as such, a regular incident of employment, and two, it produced a special benefit to the employer in that the employees, by remaining at the job site during lunch, did not travel to a restaurant, thereby risking returning late. *Id.*

We granted respondent's petition for certification, 100 *N.J.* 114 (1985), and now reverse. For the reasons that follow, we conclude that neither of the conditions set forth in *N.J.S.A.*

34:15–7 has been satisfied. Hence, Sarzillo's injury is not compensable.

## II

The original Workmen's Compensation Act, enacted in 1911, provided (with exceptions not relevant here) that compensation shall be paid for injuries or death by accident "arising out of and in the course of [the] employment...." *L.* 1911, *c.* 95. Prior to the amendment of *N.J.S.A.* 34:15–7 in 1979, there was no specific statutory provision dealing with employee injuries arising from recreational or social activities. The leading New Jersey cases addressing the issue whether such injuries were compensable were *Tocci v. Tessler & Weiss, Inc.*, 28 *N.J.* 582 (1959), and *Complitano v. Steel & Alloy Tank Co.*, 34 *N.J.* 300 (1961), rev'g on dissenting opinion below, 63 *N.J.Super.* 444, 456 (App.Div.1960) (Conford, J.A.D., dissenting).

In those cases, this Court in carrying out the "prescribed liberal construction" of the Act, *Tocci*, 28 *N.J.* at 593, substantially expanded coverage for injuries sustained by employees while engaged in recreational and social activities. *Tocci* did so primarily through broadly conceiving the indicia of "a regular incident and condition of the employment." [1] Prior to *Compli-*

---

[1] *Tocci* held:

When the employees first transferred their luncheon recreational activity to the employer's premises the company might have but did not order its discontinuance; on the contrary it approved and encouraged its continuance and in so doing was presumably fully aware of the resultant benefit to itself in improving the morale of its employees, in having its employees close by so that they could readily resume their work on time, and in having its employees engage in their recreational activity on its own premises where it was in a position to exercise such supervision as it might consider appropriate. The sanctioned recreational activity at the employer's premises quickly became a customary one and was thereafter as incidental to the employment as was the luncheon itself or as would be a customary break for coffee or a cigarette or other permitted relaxation at the premises during the regular work day. The time, the place and the

*tano*, the mutual-benefit doctrine had been applied primarily where the employer explicitly had encouraged the employee to attend the social or recreational events.[2] *Complitano* expanded the doctrine to encompass as the basic inquiry "whether the employer's participation in or contribution to the arrangements for the recreation is such that it is reasonably inferable that a benefit was expected therefrom, such as company advertising, or betterment of employer-employee relations, rather than that it was motivated solely by altruistic beneficence toward the employees." 63 *N.J.Super.* at 463.

The amended Workers' Compensation Act reads in pertinent part:

> When employer and employee shall by agreement, either express or implied, ... accept the provisions of this article compensation for personal injuries to ... such employee by accident arising out of and in the course of employment shall be made by the employer without regard to the negligence of the employer, ... in all cases except ... *when recreational or social activities, unless such recreational or social activities are a regular incident of employment and produce a benefit to the employer beyond improvement in employee health and morale, are the natural and proximate cause of the injury.*
> [*L.* 1979, *c.* 283 (emphasis added).]

The italicized portion of the statute was enacted as a part of extensive amendments that became effective January 10, 1980. Although through the years there have been many changes in the Act, the 1979 amendments "represent the most comprehensive reforms in the history of New Jersey's workers' compensation laws." Kumpf, "Occupational Disease Claims Under the Workers' Compensation Reforms," 12 *Seton Hall L.Rev.* 470, 470 (1982) (quoted in *Perez v. Pantasote, Inc.*, 95 *N.J.* 105, 111

---

> employer's encouragement of the activity, sufficiently bespeak its relation to the employment....
> [28 *N.J.* at 593.]

[2]*See DuCharme v. Columbia Eng'g Co.*, 31 *N.J.Super.* 167 (App.Div.1954) (injury sustained at employer-sponsored Christmas party); *Harrison v. Stanton*, 26 *N.J.Super.* 194 (App.Div.1953), aff'd, 14 *N.J.* 172 (1954) (employee injured while driving home babysitter hired to care for his children while he and his wife attended social functions to further employer's business).

(1984)). The dominant purpose of the 1979 revision as a whole is to "make available additional dollars for benefits to seriously disabled workers while eliminating, clarifying or tightening awards of compensation based upon minor permanent partial disabilities not related to the employment," as well as to contain the overall cost of workers' compensation. N.J. Senate Labor, Industry, and Professions Committee, Joint Statement to Senate Committee Substitute for N.J. Senate No. 802 and Assembly Committee Substitute for N.J. Assembly No. 840 (Nov. 13, 1979) (hereinafter Joint Statement); *Perez*, 95 *N.J.* at 114. The Joint Statement listed nine ways that the legislation would aid employers by limiting costs; included therein was to exclude "most injuries sustained during recreational or social activities." *Poswiatowski v. Standard Chlorine Chemical Co.*, 96 *N.J.* 321, 331 n.2 (1984).

Both the letter and spirit of the amended Act tighten the general criteria for compensation (arising out of and in the course of employment). The plain language of the amendment discontinues the "sweeping generality" of the original statute, *Tocci*, 28 *N.J.* at 587, by adding a specific exception with two specific criteria—that injuries or death sustained through recreational or social activities are not compensable, unless such activities (1) are a regular incident of employment *and* (2) produce a benefit to the employer beyond improvement in employee health and morale.

By specifically excepting improvements in an employee's health and morale from being a sufficient benefit to an employer to satisfy the general criteria, the Legislature laid to rest the mutual benefit doctrine relied on in part by this Court in *Tocci* and *Complitano* in drawing the line between injuries arising out of and in the course of the employment and those unrelated to the employment. *See Dowson v. Borough of Lodi*, 200 *N.J.Super.* 116, 121 (App.Div.1985).

In what way the amended statute tightens the general criteria by explicitly requiring that the recreational or social activities be "a regular incident of employment" is less clear. Spon-

sorship itself typically had been regarded as an indication that the activities were a regular incident of employment. Yet, the Joint Statement declares "injuries sustained during recreational or social activities *sponsored* by the employer to be noncompensable unless such activities are a regular part of the employment." (Emphasis added.) This is the extent of the legislative history with respect to this amendment.[3]

Nevertheless, considering the dominant purpose of the 1979 revision and the language of this amendment, we conclude that the Legislature intended that both specific criteria be construed as effecting a substantial change from prior practice.

### III

We are mindful that the Workers' Compensation Act generally is to be construed liberally to compensate workers for injuries arising out of and in the course of employment. But there is no gainsaying that through its amendment of *N.J.S.A.* 34:15–7 the Legislature intended to tighten, clarify, or eliminate the availability of workers' compensation for injuries sustained during recreational or social activities. We hold that Sarzillo has satisfied neither of the specific criteria (both of which must

---

[3]In *Cotton v. Worthington Corp.*, 192 *N.J.Super.* 467 (App.Div.1984), the following reports discussing the amendment are cited in a footnote:

> See also the interpretation of *N.J.S.A.* 34:15–7 contained in *A Report On The Workers' Compensation Amendments of 1979* issued by the New Jersey Department of Labor and Industry (July 1, 1981):
>
>> This section of the law introduced additional *restrictions on employer liability.* Injury or death resulting from certain work associated *recreational and social activities* are not compensable under the new law. [*Id.* at 28]
>
> In July 1982, the New Jersey Department of Labor again filed *A Report On The Workers' Compensation Amendments of 1979* in which it explained under the heading—"Other Provisions to Tighten Criteria"—
>
>> Another change in the law denies compensability for injuries incurred solely in recreational or social activities, unless such recreational or social activities are a regular incident of employment and produce a benefit to the employer beyond improvement of employee health and morale, and are the natural and proximate cause of the death or injury. [*Id.* at 9]
>
> [192 *N.J.Super.* at 471 n. 2.]

be met to impose liability) set forth in the amended statute. Moreover, we do not believe that he could recover under Professor Arthur Larson's delineated criteria,[4] which accord substantially with those of *N.J.S.A.* 34:15–7.

First, Sarzillo's playing of Ka-nocka was not a "regular incident of employment" within the contemplation of the amended statute. It is undisputed that Sarzillo was free to spend the lunch period on or off the premises of the construction site as he pleased. He chose to play Ka-nocka for his own amusement. Turner did not contribute to, participate in, or encourage the activity, much less compel employees to engage in it. Playing Ka-nocka was by no means a recognized customary lunchtime recreational activity; it was an activity carried on occasionally by several employees over a three-month period. Turner, in the words of the Judge of Compensation, "never ordered these employees to cease" playing Ka-nocka. This is a far cry from the inter-company and intra-company team activity present in both *Tocci* and *Complitano.* Such an act cannot possibly be construed as "sponsorship." Sarzillo has shown none of the indicia of work-connection, incidence and conditioning, let alone compulsion, relied on by this Court in *Tocci,* 28 *N.J.* at 593 (quoted *supra,* at 117–118 n.1). Sarzillo's playing the game was a "regular incident of employment" only in the sense that the "incident" of three or four employees playing Ka-nocka occurred occasionally (not "regularly") during their lunch breaks, and that but for his employment he would not

---

[4]A A. Larson, *The Law of Workmen's Compensation* § 22, at 5–82 (1985), offers the following criteria:

Recreational or social activities are within the course of employment when:
(1) They occur on the premises during a lunch or recreation period as a regular incident of the employment; or
(2) The employer, by expressly or impliedly requiring participation, or by making the activity part of the services of an employee, brings the activity within the orbit of the employment; or
(3) The employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.

have been there. This is by no stretch of language the sense of the statute.

Failure to satisfy the first criterion itself is dispositive, but if anything Sarzillo's case is even weaker on the second criterion. Conceding *arguendo* that he could satisfy the now-abolished mutual benefit doctrine, Sarzillo cannot meet the new requirement that the recreational activity produce a benefit to the employer beyond improvement in employee health and morale. Unlike *Complitano,* where besides the morale benefit the activity produced an advertising benefit, here there was no advertising, no uniforms with company logo, no publicity through newspaper listings of league standings, no admission to the general public—in short, there was no benefit to the company from improved public relations and consumer good will.

Sarzillo submits, and the Judge of Compensation and the Appellate Division found, that his playing the game "produced the special benefit to the employer that employees, by remaining at the job site during lunch, did not instead travel some distance to a restaurant and exceed or risk exceeding their allotted 40 minute break." 198 *N.J.Super.* at 31. To hold that an employee, just by remaining on the premises during a lunch break, with nothing more, confers a special benefit on an employer would make a mockery of the restrictive legislative intent. Moreover, the central issue here is not whether Sarzillo's remaining on the job site during lunch time conferred a special benefit on Turner but whether Sarzillo's playing of Ka-nocka during his lunch period conferred a special benefit on Turner. It clearly did not. In fact, here, considering the limited number of employees involved and the circumstances under which they played, it is difficult even to find the previously-sufficient benefit of improving the health and morale of the employees to the mutual benefit of employee and employer.

We recognize that the factual variations are infinite and that no standard or "legalistic formula," *Tocci,* 28 *N.J.* at 587, will so clearly establish whether an injury is or is not compensable

as to resolve every case without the exercise of judgment. Nonetheless, given the plain language of the amended statute and the clear legislative intent, one cannot but conclude that the injury in this case is not compensable under *N.J.S.A.* 34:15-7.

The judgment of the Appellate Division is reversed and the cause remanded to the Division of Workers' Compensation for entry there of judgment in favor of respondent-appellant.

*For reversal and remandment* —Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.