SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

### Kim Goulding v. NJ Friendship House, Inc. (A-48-19) (083726)

**Argued October 13, 2020 -- Decided February 8, 2021**

**FERNANDEZ-VINA, J., writing for the Court.**

Under New Jersey's Worker's Compensation Act, an employee injured during a social or recreational activity generally cannot receive compensation for those injuries unless a two-part exception is met. See N.J.S.A. 34:15-7. In this case, the Court considers whether the injuries sustained by claimant Kim Goulding at an event hosted by her employer are compensable.

Goulding was an employee of North Jersey Friendship House, Inc. (Friendship House), a non-profit organization that assists individuals with developmental disabilities. She worked Monday through Friday as a chef/cook, and her responsibilities included cooking meals for, and teaching vocational classes to, Friendship House's clients.

On a Saturday in September 2017, Friendship House hosted its first ever "Family Fun Day," which it planned to hold as an annual event moving forward. The event was designed to provide a safe and fun environment with recreational activities for the clients of Friendship House and their families. Friendship House employees were asked to volunteer to work the event, but there were no consequences for those who did not. Goulding volunteered to work the event as a cook, her normal job at Friendship House.

On the day of the event, Goulding set up breakfast. While later preparing for lunch, she stepped in a pothole and fell down, injuring her ankle. Goulding continued to help the other cooks prepare lunch while keeping her foot iced and elevated. She left in the afternoon and did not participate in any of the games or activities at the event.

Goulding filed a claim for worker's compensation and benefits. Friendship House maintained that Goulding was not entitled to relief because she was not working for Friendship House when the injury occurred.

The workers' compensation court dismissed Goulding's claim, determining that Family Fun Day was a social or recreational event and that the two-part test of N.J.S.A. 34:15-7 was not satisfied. The Appellate Division affirmed. The Court granted certification. 241 N.J. 66 (2020).

1

**HELD:** The injury sustained by Kim Goulding while volunteering at her employer-sponsored event is compensable because, as to Goulding, the event was not a social or recreational activity. Even if N.J.S.A. 34:15-7 was applicable here, Goulding would still have satisfied the two-part exception set forth in that statute. Her role at the event, which was planned to be held annually, was the same as her role as an employee, and but for her employment at Friendship House, Goulding would not have been asked to volunteer and would not have been injured. Thus, Goulding's injury was "a regular incident of employment." See ibid. Additionally, Friendship House received a benefit from Family Fun Day "beyond improvement in employee health and morale." See ibid. The event was not a closed event for the Friendship House team. Rather, it was an outreach event to celebrate and benefit Friendship House's clients, creating goodwill in the community.

1. The Worker's Compensation Act is humane social legislation that is liberally construed to implement the legislative policy of affording coverage to as many workers as possible. Originally, the Act did not mention "recreational or social activities," and compensability depended instead on whether accidents arose "out of and in the course of employment." In Tocci v. Tessler & Weiss, Inc., the Court found that injuries sustained during a lunchtime softball game were compensable because the employer "approved and encouraged" the game, which quickly "became a customary" activity and "was thereafter as incidental to the employment" as lunch, coffee or cigarette breaks. 28 N.J. 582, 593 (1959). And in Complitano v. Steel & Alloy Tank Co., , the Court found compensable an injury sustained in an after-hours, off-premises softball game, where the employer's sponsorship of the team was "substantially motivated" by the "intangible benefit[s]" the company received such as "promotion of the company's good name before the general public" and "heightened prestige and civic status" in the community. See 34 N.J. 300 (adopting 63 N.J. Super. 444, 467, 469 (Conford, J.A.D., dissenting)). (pp. 11-15)

2. Under N.J.S.A. 34:15-7, added to the Act in 1979, an injury "arising out of and in the course of employment" is not compensable if it is sustained during "recreational or social activities" unless a two-part exception applies. Accordingly, when an employer defends against a claim by asserting that the employee was injured during a "recreational or social activit[y,]" a court must first consider whether the activity was, in fact, "recreational or social" within the meaning of the statute. If the activity was not recreational or social in nature, then the employer may not invoke that exception to compensation. (pp. 15-17)

3. The Act does not define "social or recreational activity." The Court has underscored the ambiguity of that label, noting that "from the perspective of an employee, the meaning of the phrase 'recreational or social activities' is not self-evident." Lozano v. Frank DeLuca Constr. 178 N.J. 513, 522 (2004). In Lozano, the Court held that "when an employer compels an employee's participation in an activity generally viewed as recreational or social in nature, the employer thereby renders that activity work-related as a matter of law." Id. at 518. Significantly, however, the Lozano Court did not find that non-compulsory activities are always "recreational or social activities." Determination of

2

whether a non-compulsory activity is a recreational or social activity within the meaning of the statute thus remains a fact-intensive and case-specific inquiry.  (pp. 17-20)

4.  Here, the Court disagrees that Goulding's volunteering at Family Fun Day was a social or recreational activity.  If an employer-sponsored event is designed with the purpose of benefitting the employer's clients, and an employee volunteers to help facilitate the event, the event cannot be deemed a social or recreational activity as to that employee.  N.J.S.A. 34:15-7 applies to "recreational or social <u>activities</u>" -- not "recreational or social <u>events</u>."  It is the nature of Goulding's <u>activities</u> at the event that determine compensability, just as employee compulsion -- not the character of the event -- determined compensability in <u>Lozano</u>.  Family Fun Day, as to Goulding, was not a social or recreational activity.  And, because Friendship House has advanced no other applicable exception under the Act, Goulding's injuries are compensable.  (pp. 20-22)

5.  The Court adds that Goulding would be entitled to compensation under N.J.S.A. 34:15-7's two-part test even if her volunteer work at Family Fun Day could be deemed a recreational or social activity:  her injury was sustained during an activity that (1) was a "regular incident of employment" and (2) "produce[d] a benefit to the employer beyond improvement in employee health and morale."  (p. 22)

6.  As to the first prong, the Court distinguishes <u>Sarzillo v. Turner Construction Co.</u>, where the Court rejected a claim for injuries sustained during a lunchtime game the employer did not "contribute to, participate in, or encourage."  101 N.J. 114, 121-22 (1985).  Here, Goulding would not have attended the event and been injured but for Friendship House's request for volunteers.  Moreover, the event took place on the Friendship House property, and it was organized and sponsored by Friendship House and advertised by Friendship House to its clients.  Further, Family Fun Day -- designed to be a recurring "annual" event -- can be considered "customary" and was sufficiently related to the employment, <u>see</u> <u>Tocci</u>, 28 N.J. at 593, particularly for Goulding, who volunteered to cook at the event in keeping with her regular role at Friendship House.  (pp. 22-25)

7.  As to the second prong, any benefit the event had to employee health and morale was incidental to the event, not the driving force behind it.  Through Family Fun Day, with its stated purpose of celebrating clients, their families, and the community, Friendship House received "intangible benefits" including fostering goodwill in the community, like the employer in <u>Complitano</u>.  And the experience enjoyed at Family Fun Day by the clients and their families -- the very people Friendship House has made it its mission to serve -- is a separate benefit in and of itself.  (pp. 25-27)

**REVERSED and REMANDED to the worker's compensation court.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUSTICE FERNANDEZ-VINA's opinion.**

3

SUPREME COURT OF NEW JERSEY
A-48 September Term 2019
083726

Kim Goulding,

Petitioner-Appellant,

v.

NJ Friendship House, Inc.,

Respondent-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|---|---|
| October 13, 2020 | February 8, 2021 |

Richard A. Grodeck argued the cause on behalf of
appellant (Piro, Zinna, Cifelli, Paris & Genitempo,
attorneys; Richard A. Grodeck, on the brief).

James E. Santomauro argued the cause on behalf of
respondent (Biancamano & DiStefano, attorneys; James
E. Santomauro, on the brief).

JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

Under New Jersey's Worker's Compensation Act, an employee injured
during a social or recreational activity generally cannot receive compensation
for those injuries. See N.J.S.A. 34:15-7. However, the Act provides an

1

exception to that general rule and expressly permits compensation "when such recreational or social activities [(1)] are a regular incident of employment and [(2)] produce a benefit to the employer beyond improvement in employee health and morale." Ibid. In this case, the Court considers whether the injuries sustained by claimant Kim Goulding at an event hosted by her employer are compensable.

Goulding was an employee of North Jersey Friendship House, Inc. (Friendship House), a non-profit organization that assists individuals with developmental disabilities. She worked for Friendship House as a cook, and she taught cooking classes to Friendship House's clients. Goulding was injured when she fell while volunteering as a cook at "Family Fun Day," an event Friendship House held for its clients.

The workers' compensation court here focused on Family Fun Day as a whole, concluded it was a social or recreational activity, and found that Goulding was not entitled to compensation under the two-part test of N.J.S.A. 34:15-7. The Appellate Division affirmed that decision.

We disagree. Whether an activity is social or recreational should turn on the employee's role in the activity -- whether she is participating as a guest or providing services for her employer at the event. If the employee is helping to facilitate the activity in the manner that occurred here, the event cannot be

2

deemed a social or recreational activity as to that employee, and any injuries sustained by the employee while acting in that capacity should be compensated. That result accords with the liberal construction due the Act as "humane social legislation." See Hersh v. County of Morris, 217 N.J. 236, 243 (2014) (quotation omitted).

We also disagree with the determination that Goulding does not meet the two-prong exception established in N.J.S.A. 34:15-7. Her role at the event, which was planned to be held annually, was the same as her role as an employee; but for her employment at Friendship House, she would not have been asked to volunteer and would not have been injured. Viewed in that light, Goulding's injury was "a regular incident of employment." Additionally, Friendship House received a benefit from Family Fun Day beyond an improvement to employee health and morale. The event was not a closed, internal event for the Friendship House team. Rather, it was an outreach event designed to celebrate and benefit Friendship House's clients, thereby creating goodwill for Friendship House in the community that could expand its fundraising opportunities in the future. Goulding was therefore eligible for compensation for her injuries under N.J.S.A. 34:15-7.

3

Because we conclude that Goulding's injuries were compensable, we reverse the judgment of the Appellate Division and remand the matter to the worker's compensation court for further proceedings.

I.

A.

We begin by summarizing the pertinent facts and procedural history. Friendship House is a non-profit organization whose mission is "to build the skills of individuals with varying abilities and developmental needs by providing, within a safe haven, comprehensive clinical treatment, vocational training and work opportunities in order to achieve meaningful and productive lives."

In November 2016, Goulding started working for Friendship House. In September 2017, she was a chef/cook for Friendship House, working Monday through Friday from 10:00 a.m. to 3:30 p.m. Goulding was paid hourly. Her responsibilities included cooking and preparing meals for Friendship House's clients and teaching vocational classes to clients so that they could learn how to cook certain dishes. During lunch hours, Goulding ran the grill and worked closely with Friendship House's clients, including individuals on the autism spectrum.

4

On September 23, 2017, Friendship House hosted its first ever "Family Fun Day," which it planned to hold as an annual event moving forward. The event was designed to provide a safe and fun environment with recreational activities, including games and music, for the clients of Friendship House and their families. Friendship House employees were asked to volunteer to work the event, but there were no consequences for those who chose not to volunteer. Goulding volunteered to work the event as a cook, her normal job at Friendship House.

On the day of the event, Goulding arrived between 8:30 a.m. and 9:00 a.m. and began setting up for breakfast. After breakfast, she began preparing for lunch. Sometime between 11:30 a.m. and 12:30 p.m., Goulding stepped in a small pothole in the parking lot and fell down, injuring her ankle. Several people at the event assisted her after she fell, getting her ice and advising her to remain seated with her foot elevated. Goulding continued to help the other cooks prepare lunch while keeping her foot elevated. She left the event at around 2:30 p.m. Goulding did not participate in any of the games or activities at the event.

B.

Goulding filed a claim with the State of New Jersey, Department of Labor and Workforce Development, Division of Workers' Compensation

against Friendship House asserting she suffered a work-related injury to her right foot and ankle at Family Fun Day. Friendship House filed an answer denying that Goulding was employed when she was injured.

Goulding filed a Notice of Motion for Temporary and/or Medical Benefits for surgery to repair the injuries to her ankle. She also sought temporary disability benefits as of the date of her injury. In support of her claim, Goulding provided a certification from counsel and medical records. Friendship House filed a statement denying Goulding was entitled to any medical treatment or temporary disability benefits because she was not working for Friendship House when the injury occurred.

The motion was heard in May 2018. The judge issued a decision on the record, determining that Goulding's accident did not occur in the course of her employment. The workers' compensation court determined Family Fun Day was a social or recreational event. The compensation court then turned to the two-part exception found in N.J.S.A. 34:15-7 to determine compensability for an injury sustained during a "recreational or social activity."

The court held that Family Fun Day was not a regular incident of Goulding's employment as required by the first part of the N.J.S.A 34:15-7 test because this was the "first and only" Family Fun Day Friendship House had sponsored, and the incident in question was not the cooking activity

6

Goulding volunteered for, but her attendance at the event generally. The compensation court added that Goulding volunteered to help at the event, was not compelled to do so, and could have volunteered for a position other than the one she held at her job. The compensation court also held that Family Fun Day did not produce a benefit to Friendship House beyond an improvement to employee health and morale as required by the second part of the statutory test because there was no fundraising or marketing associated with the event. Thus, the court dismissed Goulding's claim with prejudice.

The Appellate Division affirmed that decision. The appellate court first agreed that the test set forth in N.J.S.A. 34:15-7 governed the inquiry because Family Fun Day was a recreational or social activity: the event was designed to celebrate the clients; it included food, games, and music; Goulding volunteered to attend or help; and it was held on a Saturday, not a regular workday.

The Appellate Division then concluded that Goulding did not meet her burden on the first prong of the statutory exception because Family Fun Day was not a regular incident of her employment. The Appellate Division reasoned: "[t]his was the first Family Fun Day;" it was held outside normal working hours; employees were not required to volunteer or attend; if an employee did volunteer, she could do so in any capacity; and Goulding could

7

have chosen to help with games or prizes, she did not have to cook. Thus, Family Fun Day could not be deemed "as customary as a lunch or coffee break."

Because the Appellate Division concluded that Goulding did not satisfy the first prong, it did not address the second prong of the N.J.S.A. 34:15-7 test but did note there was a "lack of support in the record [to show] that there was any benefit to [Friendship House] in the form of positive public relations."

We granted Goulding's petition for certification. 241 N.J. 66 (2020).

II.

A.

Goulding first argues that she was not engaged in a recreational or social activity when she was injured because, although the event itself may have involved games and social activities for the clients of Friendship House, she took no part in those activities and was instead there to work.

Alternatively, Goulding argues that if her involvement with Family Fun Day was social or recreational, then she is entitled to compensation under the two-part test of N.J.S.A. 34:15-7. Goulding contends Family Fun Day should be deemed a "regular incident of employment" under the first part of that test because it was created as an "annual" event. Turning to the second part of the test, Goulding contends the workers' compensation court and Appellate

8

Division took too narrow a view of what constitutes a benefit in the context of a non-profit organization like Friendship House, which is defined by its mission, not by profit or loss. Goulding argues that Family Fun Day did produce a benefit for Friendship House by furthering its mission of providing services to clients and their families.

Goulding adds that affirming the Appellate Division's decision here would create a disincentive for employees of non-profits to volunteer their time to work at sponsored events.

B.

Friendship House argues that the workers' compensation court and Appellate Division properly focused on the social and recreational nature of the event at which Goulding was injured instead of on the cooking Goulding did for Family Fun Day. Friendship House further argues that reducing Goulding's job duties to cooking is misleading, because she also provides vocational training for the clients and teaches them how to cook. Friendship House submits that because Goulding was not engaged in either of those other duties, she was not engaged in her normal job duties at Family Fun Day.

Friendship House also contends the Act covers only employees who perform services for an employer for financial consideration; it does not cover injuries sustained while volunteering. Friendship House acknowledges there

9

are exceptions for specific classes of public officials, such as volunteer firefighters, but Goulding does not fit within those exceptions. Friendship House adds that because the events occurred on a Saturday -- outside of her regular work hours -- and because she chose to volunteer, Goulding was not working for Friendship House when she was injured and is therefore not entitled to workers' compensation benefits.

Relying on our decisions in <u>Lozano v. Frank DeLuca Construction</u>, 178 N.J. 513 (2004), and <u>Sarzillo v. Turner Construction Co.</u>, 101 N.J. 114 (1985), Friendship House argues Goulding has not satisfied the two-part exception of N.J.S.A. 34:15-7. On the first prong, Friendship House submits that for a recreational or social activity to be a regular incident of employment, the employee must show that participation was compelled by the employer, which Goulding has admitted was not the case. Friendship House further argues that Goulding fails to satisfy the second prong because Family Fun Day was not a fundraising event, nor did it have marketing purposes; thus, there was no benefit to Friendship House beyond an improvement to employee health and morale.

III.

A.

Appellate courts approach the factual findings made by a workers' compensation court with "substantial deference" in recognition of the compensation judge's expertise and opportunity to hear witnesses and assess their credibility. Ramos v. M & F Fashions, Inc., 154 N.J. 583, 594 (1998). Thus, review "is limited to 'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole.'" Sager v. O.A. Peterson Constr. Co., 182 N.J. 156, 163-64 (2004) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)).

"An agency's interpretation of a statute, however, although entitled to some weight, is not binding on the reviewing court." Brock v. PSE&G, 149 N.J. 378, 383 (1997). Rather, "courts remain the 'final authorities' on issues of statutory construction and [need not] 'stamp' their approval of the administrative interpretation." Koch v. Dir., Div. of Tax'n, 157 N.J. 1, 8 (1999) (alteration in original).

In applying provisions of the Act, this Court has long stressed that it "is humane social legislation designed to place the cost of work-connected injury upon the employer who may readily provide for it as an operating expense." Tocci v. Tessler & Weiss, Inc., 28 N.J. 582, 586 (1959). Indeed, New Jersey

11

courts "liberally constru[e] the Act to implement the legislative policy of affording coverage to as many workers as possible." Brower v. ICT Grp., 164 N.J. 367, 373 (2000).

B.

N.J.S.A. 34:15-7, which contains the exception for "recreational or social activities" at issue in this appeal, was added to the Act in 1979. L. 1979, c. 283, § 1. As enacted in 1911, the Act did not mention "recreational or social activities," but rather "simply provided that compensation would be awarded for injuries or death from accidents 'arising out of and in the course of employment.'" Lozano, 178 N.J. at 523 (quoting L. 1911, c. 95, § 7).

Courts were left to determine whether accidents arose "out of and in the course of employment" and were thus compensable. See ibid. To make that determination, they adopted a series of factors:

> (a) the customary nature of the activity; (b) the employer's encouragement or subsidization of the activity; (c) the extent to which the employer managed or directed the recreational enterprise; (d) the presence of substantial influence or actual compulsion exerted upon the employee to attend and participate; and (e) the fact that the employer expects or receives a benefit from the employee's participation in the activity.
>
> [Ibid. (quoting Harrison v. Stanton, 26 N.J. Super. 194, 199 (App. Div. 1953), aff'd o.b., 14 N.J. 172 (1954)).]

Those factors were assessed "based on the totality of the circumstances" -- "[t]he absence or presence of a particular factor was not dispositive."  Ibid.

In early cases in which courts considered whether non-work activity could be deemed to "aris[e] out of and in the course of employment," compensation was denied "for injuries sustained during employer-sponsored recreational and social activities at which attendance was not required and from which the employer did not receive a clear business benefit."  Ibid.; see, e.g., Stevens v. Essex Fells Country Club, 136 N.J.L. 656, 658-59 (Sup. Ct. 1948) (denying compensation to a caddy for an injury suffered during a weekly golf tournament sponsored by the employer exclusively for employees).  However, beginning with Tocci in 1959, the Act's application was expanded in light of its "prescribed liberal construction."  28 N.J. at 593.

In Tocci, this Court addressed whether injuries sustained during a lunchtime softball game were compensable.  28 N.J. at 589-90.  The employees' game took place on a field on company property, and the employer supplied bats and balls.  Id. at 584-85.  In finding the claimant employee's injuries compensable, this Court reasoned that the employer "approved and encouraged [the game's] continuance" and was "fully aware" of the game's benefits to itself, which included improved employee morale; having the "employees close by so that they could readily resume their work on time;"

13

and having the ability "to exercise such supervision as it might consider appropriate." Id. at 593. The Court also observed that the softball game "quickly became a customary" activity and "was thereafter as incidental to the employment" as lunch, coffee, or cigarette breaks during the workday. Ibid. We concluded that those facts revealed a sufficient relationship between the game and the employment that the claimant's injury could "fairly and justly be grouped with those occurrences which may be said to have had some work connection." Id. at 593-94.

In Complitano v. Steel & Alloy Tank Co., 34 N.J. 300 (1961), we found compensable an injury sustained in an after-hours softball game held away from the employer's premises based on the employer's ties and the event. There, the claimant employee was injured playing on a team that represented his employer. Complitano v. Steel & Alloy Tank Co., 63 N.J. Super. 444, 445-46 (App. Div. 1960). The team was formed by the employees, and the employer did not exercise control over the team or coerce or influence the employees to play. Id. at 446-47. However, the employer paid the league entrance fee and helped cover the cost of bats, balls, and uniforms, which bore the company name. Id. at 446. Further, the local newspaper occasionally published the league standings, and when the team won the league title all

14

three years they played; the company received a large trophy that was "displayed in the entrance hall of the company office." Ibid.

Based on those facts, we reversed the Appellate Division's denial of compensation relying on the dissent, Complitano, 34 N.J. 300. The dissent concluded the claimant employee should be compensated for his injuries because "the activity came within the scope of employment" under the Act, Complitano, 63 N.J. Super. at 469 (Conford, J.A.D., dissenting). The dissenting judge determined the employer's sponsorship of the team was not motivated by "altruism alone," but instead was "substantially motivated" by the "intangible benefit[s]" the company received such as "promotion of the company's good name before the general public" and "its heightened prestige and civic status" in the community. Id. at 467, 469.

In 1979, the Legislature made several amendments to the Act, with the "dominant purpose" of "'mak[ing] available additional dollars for benefits to seriously disabled workers while eliminating, clarifying or tightening awards of compensation based upon minor permanent partial disabilities not related to the employment,' as well as . . . contain[ing] the overall cost of workers' compensation." Sarzillo, 101 N.J. at 119 (quoting S. Labor, Indus., and Pros. Comm., Joint Statement to S. Comm. Sub. for S. 802/Assemb. Comm. Sub. for A. 840 (Nov. 13, 1979)). N.J.S.A. 34:15-7 was added to the Act as part of

15

those amendments, and that statute and the carve-outs from coverage it contains -- including the carve-out for injuries sustained in the course of recreational and social activities at the center of this appeal -- have been interpreted as a legislative attempt to reverse the judicial trend toward expansive interpretation that began in Tocci and Complitano.  See Lozano, 178 N.J. at 529-30.

In addition to other defenses against compensation claims, N.J.S.A. 34:15-7 provides, as relevant here, that

> [w]hen employer and employee shall by agreement, either express or implied . . . accept the provisions of this article compensation for personal injuries to . . . such employee by accident arising out of and in the course of employment shall be made by the employer without regard to the negligence of the employer . . . in all cases except . . . when recreational or social activities, unless such recreational or social activities are a regular incident of employment and produce a benefit to the employer beyond improvement in employee health and morale, are the natural and proximate cause of the injury.

Under the plain language of that provision, an injury "arising out of and in the course of employment" is not compensable if it is sustained during "recreational or social activities."  N.J.S.A. 34:15-7.  Accordingly, when a claim is pressed and an employer defends against the claim by asserting that the employee was injured during a "recreational or social activit[y,]" a court must first consider whether the activity was, in fact, "recreational or social"

16

within the meaning of the statute. If the activity was not recreational or social in nature, then the employer may not invoke that exception to compensation.

If, on the other hand, the activity during which the injury is sustained was recreational or social in nature, N.J.S.A. 34:15-7 provides that the injury will only be covered if "such recreational or social activities are a regular incident of employment and produce a benefit to the employer beyond improvement in employee health and morale." Put differently, "an employee injured during a recreational or social activity must satisfy a two-prong test to qualify for compensation under the [A]ct -- the activity (1) must be a 'regular incident of employment,' and (2) must 'produce a benefit to the employer beyond improvement in employee health and morale.'" Lozano, 178 N.J. at 521 (quoting N.J.S.A. 34:15-7).

IV.

A.

To decide whether Kim Goulding's injuries are compensable, we begin with the threshold determination of whether Family Fun Day constitutes a recreational or social activity within the meaning of N.J.S.A. 34:15-7.

1.

The Act does not define "social or recreational activity," and this Court has underscored the ambiguity of that label; we have noted, for example, that

17

> [a]n employer-sponsored company picnic held off-premises and after work hours that employees voluntarily attend for their own personal pleasure certainly falls within the definition of "recreational or social activities." But, there is a question whether employees would describe a company event as "recreational or social" and consider it noncompensable if the employer required attendance. That is, from the perspective of an employee, the meaning of the phrase "recreational or social activities" is not self-evident. The act's silence on the meaning of the disputed phrase requires our inquiry to extend beyond the plain language of N.J.S.A. 34:15-7.
>
> [Lozano, 178 N.J. at 522.]

In Lozano, this Court was faced with whether an employee who was injured while driving a go-cart was participating in a recreational or social activity. Id. at 518-19. The employee worked for a mason contractor and did not have a driver's license. Id. at 518. The employee and his supervisor had been working at a property with a go-cart track on the day of the injury. Id. at 519. After the supervisor drove around the track, he instructed the employee to "get in" and drive. Ibid. The employee initially refused because he did not know how to drive, but the supervisor assured him it was easy and told him to "get in." Ibid. The employee crashed and sustained injuries. Ibid.

The compensation court dismissed the employee's claim because his injury occurred when he was "off the clock" and "engaged in a 'recreational activity' . . . outside the scope of his employment," and he had fun. Id. at 520.

18

We disagreed with the dismissal, holding that "when an employer compels an employee's participation in an activity generally viewed as recreational or social in nature, the employer thereby renders that activity work-related as a matter of law." Id. at 518. "[W]e construe[d] the phrase 'recreational or social activities' as it appears in N.J.S.A. 34:15-7 to encompass only those activities in which participation is not compulsory." Id. at 531.

Significantly, however, we did not find the converse to be true. We did not find that non-compulsory activities are always "recreational or social activities." Determination of whether a non-compulsory activity is a recreational or social activity within the meaning of the statute thus remains a fact-intensive and case-specific inquiry. Compare, e.g., Quinones v. P.C. Richard & Son, 310 N.J. Super. 63, 65-69 (App. Div. 1998) (arm-wrestling matches that were not approved by the employer, but that took place regularly at work and during work hours, were social or recreational activities for purposes of N.J.S.A. 34:15-7), with Valdez v. Tri-State Furniture, 374 N.J. Super. 223, 239-40 (App. Div. 2005) (the claimant employee's "driving [of a] forklift[]" in an unorthodox manner" at his worksite did not constitute a "purely social or recreational activity, entirely unrelated to work" because the "curiosity" that led the employee to use machinery that he was not licensed or

19

required to use as part of his job "was the direct result of his observation that the equipment was used in the course of his business").

Here, we consider whether, under the facts of this case, the specific non-compulsory activity in which Goulding participated is a recreational or social activity within the meaning of N.J.S.A. 34:15-7. In doing so, we are mindful of "the legislative policy of affording coverage to as many workers as possible." Brower, 164 N.J. at 373.

2.

We disagree with the Appellate Division's view that Goulding's volunteering at Family Fun Day was a social or recreational activity because she was not compelled to volunteer and because the event celebrated clients, had food, music, and games, and was held outside of working hours. That view implies that whenever an employee volunteers at an employer-sponsored event, she cannot be compensated if injured simply because the event has a social or recreational purpose. Such a view ignores that the Act is supposed to be construed liberally in favor of compensation, and it fails to consider the employee's role in the activity. See Lozano, 178 N.J. at 522 ("[F]rom the perspective of an employee, the meaning of the phrase 'recreational or social activities' is not self-evident." (emphasis added)).

It is undisputed that Goulding, unlike the employee in <u>Lozano</u>, was not compelled to volunteer for Family Fun Day. However, compulsion is not the only instance in which an activity can be removed from the social or recreational activity label. The facts here are distinct from prior cases in which we addressed social and recreational activities. Goulding was not playing softball on her lunch break; she was volunteering to cook (her regular job) for an event her employer was hosting, and which it planned to hold annually.

If an employer-sponsored event is designed with the purpose of benefitting the employer's clients, members, or customers, and an employee volunteers to help facilitate the event, the event cannot be deemed a social or recreational activity as to that employee. Moreover, although Family Fun Day as a whole may have been a social or recreational event, Goulding did not participate in that event in a social or recreational role because she was there to help facilitate it. The statute applies to "recreational or social <u>activities</u>" -- not "recreational or social <u>events</u>." <u>See</u> N.J.S.A. 34:15-7. Had the Legislature intended to limit compensation based on the broad category of event involved, rather than on the employee's role within that event, it could have done so. It is the nature of Goulding's <u>activities</u> at the event that determine

21

compensability, just as employee compulsion -- not the character of the event -- was held to determine compensability in Lozano, 178 N.J. at 531.

In contrast to prior cases where the employees were participating in the social or recreational activity -- playing softball, golfing, or attending a picnic -- Goulding was facilitating Family Fun Day by cooking and preparing meals for clients of Friendship House, just as she does in her regular employment. Accordingly, Family Fun Day, as to Goulding, was not a social or recreational activity. And, because Friendship House has advanced no other applicable exception under the Act, Goulding's injuries are compensable.

B.

Although our analysis could end there, we add that Goulding would also be entitled to compensation under N.J.S.A. 34:15-7 if her volunteer work at Family Fun Day could be deemed a recreational or social activity. N.J.S.A. 34:15-7 contains an exception to the general rule of no recovery for injuries sustained during a recreational or social activity that is (1) a "regular incident of employment," and that (2) "produce[s] a benefit to the employer beyond improvement in employee health and morale." Both prongs of that test are met here.

1.

The first prong of the exception requires a court to determine if the activity is a regular incident of employment.

Friendship House relies on <u>Sarzillo</u> in arguing that Family Fun Day was not a regular incident of Goulding's employment. In that case, the claimant was a journeyman-carpenter who was injured while playing "Ka-nocka," a paddle game similar to tennis, during lunch with other employees. 101 N.J. at 115-16. The employer was aware the employees played the game and had never attempted to object or stop it. <u>Id.</u> at 116.

As to the claimant employee, we determined playing "Ka-nocka" was not a "regular incident of employment" -- even under a liberal construction of the Act -- because he chose to play the game of his own accord, when he could have spent his lunch break doing whatever he liked. <u>Id.</u> at 121. Additionally, the employer did not "contribute to, participate in, or encourage the activity, much less compel employees to engage in it"; it was not a "recognized customary lunchtime recreational activity"; and it was essentially just an activity periodically engaged in by employees. <u>Ibid.</u> There was no evidence of sponsorship, and there was no "work-connection, incidence and conditioning, let alone compulsion" to make this a regular incident of employment. <u>Id.</u> at 121-22.

23

The vast disparities between the Ka-nocka game in <u>Sarzillo</u> and Family Fun Day here highlight precisely why Goulding's volunteer work at that event was a regular incident of her employment even though the event was non-compulsory and was held outside of her standard working hours.

First, regardless of the voluntariness of her participation and that she was not being paid, Goulding would not have attended the event and would not have been injured but for Friendship House's request for volunteers at the event. Moreover, the event took place on the Friendship House property and was organized and sponsored by Friendship House and advertised by Friendship House to its clients. Friendship House's active involvement in and complete control over Family Fun Day is the polar opposite of the employer's laissez-faire approach to the employee-initiated Ka-nocka game in <u>Sarzillo</u>.

Further, unlike the spontaneous and sporadic Ka-nocka games in that case, Family Fun Day was designed to be a recurring "annual" event. Indeed, Family Fun Day can be considered "customary" just like a lunch, coffee, or cigarette break and was sufficiently related to the employment. <u>See</u> <u>Tocci</u>, 28 N.J. at 593 (finding that a daily softball game played between employees "quickly became customary" and "was thereafter incidental to employment"). This is particularly true for Goulding, who volunteered to cook at the event in keeping with her regular employment position at Friendship House.

It is significant that Friendship House needed volunteers for Family Fun Day. Given the Act's liberal construction in favor of compensation, it is difficult to imagine that the Legislature intended to preclude compensation for injuries sustained by an employee who was volunteering at the employer's behest to assist in facilitating an employer-sponsored event designed to celebrate the employer's clients.

Against this specific factual backdrop, we conclude that Goulding has satisfied the first prong of the exception set forth in N.J.S.A. 34:15-7.

2.

The second prong of the test set forth in N.J.S.A. 34:15-7 requires a court to determine whether the social or recreational activity "produce[d] a benefit to the employer beyond improvement in employee health and morale." Sarzillo, 101 N.J. at 115 (quoting N.J.S.A. 34:15-7).

As with the first prong, we find guidance in Sarzillo about what circumstances fail to satisfy the second part of the test -- guidance that quickly reveals Goulding has satisfied the exception. Notably, we concluded in Sarzillo that there was no "benefit to the employer beyond improvement in employee health and morale" because there was "no advertising, no uniforms with company logo, no publicity through newspaper listings of league standings, no admission to the general public -- in short, there was no benefit

25

to the company from improved public relations and consumer good will." Id.
at 122 (distinguishing Complitano, where the employer derived a benefit both
to morale and through advertising).

As to the benefits derived from Family Fun Day, we first note there is
little evidence to suggest Family Fun Day improved employee health and
morale, especially considering there is nothing in the record suggesting
employees and their families were invited to attend as guests. Any benefit the
event had to employee health and morale was incidental to the event, not the
driving force behind it. We would be hard-pressed to conclude that an event
designed for the employer's clients, and not for its employees, has the primary
and sole purpose of improving employee health and morale.

Moreover, even though Family Fun Day was not a fundraiser, Friendship
House still received a benefit. The event had the stated purpose of celebrating
clients or members, their families, and the community. An obvious side effect
of that is there will be those who rightfully think that Friendship House is
doing good work and will be more inclined to help out in whatever way they
can as a result of that favorable impression. Thus, just as the employer in
Complitano, Friendship House received the "intangible benefits" of promoting
itself and fostering goodwill in the community. Last, the experience enjoyed
at Family Fun Day by the clients and their families -- the very people

26

Friendship House has made it its mission to serve -- is a separate benefit in and of itself. We therefore conclude this second prong has been satisfied.

## C.

In sum, we hold that the injury sustained by Kim Goulding while volunteering at her employer-sponsored event is compensable because, as to Goulding, the event was not a social or recreational activity. We further hold that, even if her volunteering for Family Fun Day were social or recreational as those terms are used in N.J.S.A. 34:15-7, she would still have satisfied the two-part exception set forth in that statute because her participation was a regular incident to her employment and it produced a benefit to Friendship House beyond improvement to employee health and morale. Her injury would thus have been eligible for compensation even if the statutory carve-out for social or recreational activity was applicable here.

## V.

We reverse the judgment of the Appellate Division and remand this matter to the compensation court for further proceedings.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, SOLOMON, and PIERRE-LOUIS join in JUSTICE FERNANDEZ-VINA's opinion.

27