**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3702-21

DAWN LATSHAW,

     Petitioner-Appellant,

v.

LAKEWOOD TOWNSHIP
POLICE DEPARTMENT,

     Respondent-Respondent.

_____

Argued March 4, 2024 – Decided March 25, 2024

Before Judges Sabatino and Vinci.

On appeal from the Division of Workers' Compensation, Department of Labor and Workforce Development, Claim Petition No. 2019-920.

Richard Nicholas Schibell, argued the cause for appellant (Schibell Law, LLC, attorneys; Richard Nicholas Schibell, of counsel and on the brief).

Laura Elizabeth Comer argued the cause for respondent (Berry, Sahradnik, Kotzas & Benson, attorneys; Laura Elizabeth Comer, on the brief).

PER CURIAM

Dawn Latshaw appeals the dismissal of her claim for workers' compensation benefits for injuries she sustained in a motor vehicle accident. The accident occurred while Latshaw, an emergency police dispatcher, was returning to her workplace in her own vehicle from a local fast-food restaurant during a paid lunch break. Applying settled law to the circumstances, we affirm.

We briefly summarize the pertinent facts derived from the record, which are largely undisputed.

Latshaw was employed by respondent, Lakewood Police Department, as a dispatcher. Her position was subject to a collective negotiations agreement ("CNA") between her employer and labor union.

On October 11, 2018, Latshaw was assigned to work the 3:00 p.m. to 11:00 p.m. shift at the police station. She worked the first part of her shift and then left the station for her meal break[1] around 6:00 or 7:00 p.m. She drove her own vehicle from the station to the restaurant. She did not perform any work-related tasks during her trip.

---

[1] For stylistic variation, we will use the terms "lunch break" and "meal break" interchangeably, mindful that Latshaw's break in this case occurred in the early evening.

A-3702-21

While driving back to the station, Latshaw was injured when she was rear-ended by another car. According to her physician, the accident caused Latshaw to sustain permanent injuries to her cervical and lumbar spine and her left leg and exacerbated a preexisting injury to her left ankle.

Latshaw filed a claim for workers' compensation benefits. Her employer opposed the claim, contending that she was injured outside the scope of work.

The case was tried before a workers' compensation judge. Latshaw was the sole witness.

Latshaw testified that she was assigned an eight-hour shift, including one hour for lunch. Employees were expected to take the break during the middle of their shift and needed supervisor approval to take the break at the end of a shift. Three dispatchers staffed every shift. The dispatchers determined among themselves when each person would take a lunch break, in a manner to avoid overlapping departures.

It is undisputed that, in accordance with the CNA, the dispatchers were paid for their time on lunch breaks, even if they left the premises. If the dispatchers worked through lunch, e.g., when emergencies overloaded the 9-1-1 lines, they would be eligible for time-and-a-half overtime pay.

A-3702-21

Following Latshaw's testimony, her employer moved to dismiss her claim petition. The employer argued her injuries were not compensable because the accident occurred while she was "on a personal errand."

On June 24, 2022, the compensation judge granted the employer's motion, agreeing that Latshaw was not "in the course of employment" when she was injured because she was on a personal errand. Hence, her injuries were not compensable under the Workers' Compensation Act.

This appeal by Latshaw ensued. While the appeal was pending, the Supreme Court issued a unanimous opinion in Keim v. Above All Termite & Pest Control, 256 N.J. 47, 55 (2023), clarifying the statutory requirements of N.J.S.A. 34:15-36 that govern the compensability of injuries sustained away from the employee's regular workplace.[2]

"Ordinarily, in the workers' compensation context, our review is limited to '"whether the findings made could reasonably have been reached on sufficient credible evidence present in the record," considering "the proofs as a whole," with due regard to the opportunity of the one who heard the witnesses to judge

---

[2] We invited both counsel to address Keim in an optional submission, and considered a supplemental letter brief from respondent discussing that new opinion. Appellant chose not to submit additional briefing.

their credibility.'" Ibid. (internal citations omitted).  However, we review de novo the central question of Latshaw's appeal—specifically, whether a claimant's accident occurred within the scope of workers' compensation coverage—because such questions of legal status warrant no special deference to the fact finder.  Ibid.; see also Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

The applicable statute, N.J.S.A. 34:15-36, governs an employee's legal status for purposes of ascertaining workers' compensation coverage.  The statute was amended by the Legislature in 1979 to restrict the breadth of what formerly had been known as the "going and coming rule."  Keim, 256 N.J. at 57; see also Hersh v. Cnty. of Morris, 217 N.J. 236, 243 (2014).

As presently worded, N.J.S.A. 34:15-36 defines when "employment" under the Workers' Compensation Act begins and ends each day, as follows:

> Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer; provided, however, when the employee is required by the employer to be away from the employer's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the direct performance of duties assigned or directed by the employer; but the employment of employee paid travel time by an

5

employer for time spent traveling to and from a job site or of any employee who utilizes an employer authorized vehicle shall commence and terminate with the time spent traveling to and from a job site or the authorized operation of a vehicle on business authorized by the employer.

[N.J.S.A. 34:15-36.]

As was most recently explained by the Supreme Court in Keim, N.J.S.A. 34:15-36 delineates four "distinct rules that define commencement and termination of employment in different scenarios." 256 N.J. at 58. The four scenarios are: (1) the premises rule; (2) the special mission rule; (3) the paid travel time rule; and (4) the authorized vehicle rule. Ibid. We will discuss only the first three rules because Latshaw was driving her personal vehicle at the time of her accident.

First, the premises rule is expressed at the outset of N.J.S.A. 34:15-36, which states:

Employment shall be deemed to commence when an employee arrives at the employer's place of employment to report for work and shall terminate when the employee leaves the employer's place of employment, excluding areas not under the control of the employer . . . .

[N.J.S.A. 34:15-36 (emphasis added).]

The premises rule "establishes that, although 'an injury to an employee that

happens going to or coming from work' is generally not compensable, such injury 'arises out of and in the course of employment,' and is therefore compensable, if it 'takes place on the employer's premises.'" Keim, 256 N.J. at 58 (quoting Kristiansen v. Morgan, 153 N.J. 298, 316 (1998)).

Here, Latshaw's injury, which occurred on her drive back to the police station from a restaurant, clearly took place away from the premises of her workplace. The accident location was not a place under her employer's control. Coverage terminated when she left the premises. Hence, Latshaw was not covered under the premises rule.

Second, Latshaw is likewise not covered under the special mission rule. That rule covers employees who have been assigned by their employers to complete work away from the "employer's place of employment." The rule is expressed through the following language of N.J.S.A. 34:15-36:

> [W]hen the employee is <u>required by the employer to be away</u> from the employer's place of employment, the employee shall be deemed to be in the course of employment <u>when the employee is engaged in the direct performance of duties assigned or directed by the employer</u> . . . .
>
> [N.J.S.A. 34:15-36 (emphasis added).]

"The 'special mission' rule allows for compensation when employees are 'required to be away from the conventional place of employment . . . if <u>actually</u>

engaged in the direct performance of employment duties.'" Keim, 256 N.J. at 59 (emphasis added) (quoting Zelasko v. Refrigerated Food Express, 128 N.J. 329, 336 (1992)). "Critically, under the 'special mission rule,' the 'duties' must be 'assigned or directed by the employer.'" Ibid. (quoting N.J.S.A. 34:15-36).

By her own admission, Latshaw was not performing any duties "assigned or directed" by her employer when she left for her meal break. She was not engaged in an employer-mandated "special mission." Instead, she was on a personal trip to buy herself food. The employer did not require her to leave the municipal building during her break. Nor did she purchase food at the restaurant for her employer or coworkers at her employer's behest. She could not take any dispatch calls on her computer device or phone while she was off the premises; that was technologically impossible for her to do when away from her desk.

In short, Latshaw was not working or performing any work duties when the accident occurred. Her circumstances may be contrasted with those of the employee in Keim, who was injured while driving to resupply his pest-control van with chemicals from his workplace at his employer's express direction. Id. at 52-53.

Third, Latshaw also is not covered under the "paid travel time rule." That rule is expressed through the following text of N.J.S.A. 34:15-36:

> [T]he employment of employee [who is] paid travel time by an employer for time spent traveling to and from a job site . . . <u>shall commence and terminate with the time spent traveling to and from a job site</u> . . . .
>
> [N.J.S.A. 34:15-36 (emphasis added).]

"Under the 'paid travel time rule,' '[w]hen the employee is paid an identifiable amount as compensation for time spent in a going or coming trip, the trip is within the course of employment.'" <u>Keim</u>, 256 N.J. at 59 (quoting 1 <u>Larson, Workers' Compensation Law</u> § 14.06 (Desk Edition)). The rule applies (1) "when the employee's injury is sustained while going to and from a job site separate from the place of employment" and (2) "the employee is paid for the time spent in traveling." <u>Id.</u>

Latshaw stresses that she was paid for her time on her lunch break, pursuant to her union's contract. But her right to be paid during her lunch time does not, in and of itself, establish the compensability of her accident. The paid travel time rule requires that the employee be "traveling <u>to and from a job site</u>." N.J.S.A. 34:15-36 (emphasis added).

Latshaw did not leave the police station to travel to a "job site." She was traveling to a personal destination, specifically a restaurant. The same conclusion of non-coverage would apply if Latshaw left the police station to stroll in the park, walk a dog, pick up dry cleaning, or fill her car's gas tank.

Such personal errands simply do not qualify under the paid travel time rule.

The non-dispositive nature of Latshaw's paid status while on her lunch break is consistent with long-standing precedent. Almost forty years ago in Sarzillo v. Turner Construction Co., 101 N.J. 114, 120-23 (1985), the Supreme Court reached a similar conclusion. In that case, a carpenter tore his Achilles' tendon during his lunch break while playing a paddle game with coworkers on their employer's premises. Id. at 116. Although the lunch break was paid, the Court concluded that the carpenter's injuries were not compensable because the employer "did not contribute to, participate in, or encourage the [game], much less compel employees to engage in it." Id. at 121. The game had no connection to their employment duties. Ibid.

To the same effect, in Jumpp v. City of Ventnor, 177 N.J. 470, 482-86 (2003), the Court denied workers' compensation coverage to a city employee who would travel to various locations to perform his work duties, but who deviated from those duties by picking up personal mail at a post office, where he was injured. The Court found the claimant's deviation was significant enough to disconnect him from his covered status. Ibid.

The Court's precedents in Sarzillo and Jumpp remain good law, and we are bound to follow them here. By going offsite from the police station to the

restaurant to buy her lunch, Latshaw ceased being within the scope of coverage. The fact that she was being paid at the time does not mandate coverage.

In her counsel's brief and at oral argument on appeal, Latshaw urges this court to adopt a different mode of analysis, one that hinges upon "positional risk" and other factors. As an intermediate appellate court, it is not our role to rewrite the law. The policy arguments for or against such a proposal are best considered by the Supreme Court or the other branches of government.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3702-21